### CALVIN COAL CO. v. FIRST NAT. BANK OF BASTROP. (No. 6990.)*

(Court of Civil Appeals of Texas. Austin. June 23, 1926. Rehearing Denied Oct. 4, 1926.)

1. **Banks and banking ⬳154(8)—Account stated and estoppel of corporation to recover money paid on secretary's unauthorized checks by failure to examine statements of account and canceled checks and vouchers held established.**

Evidence *held* to establish account stated, and estoppel of corporation to recover money, paid by bank, contrary to instructions, on checks drawn by corporation's secretary without superintendent's approval, by failure to examine statements of account and canceled checks and vouchers.

2. **Corporations ⬳426(8)—Corporation held to have waived instructions to pay only checks signed by two officers by not examining bank's books, statements of account, and canceled checks for over five years.**

Corporation not examining bank's books, statements of account, and canceled checks and vouchers for over five years *held* to have waived instructions to bank to pay only checks signed by two officers, and hence not entitled to recover money paid on checks drawn by only one of them.

3. **Corporations ⬳428(7)—That · corporation delegated to secretary duty of checking statements, that he drew checks which were paid contrary to instructions, and that he failed to disclose state of account to other officers, did not affect his authority, and delivery of passbook, statements, and canceled checks to him was notice to it.**

That corporate depositor delegated to its secretary alone duty of checking bank's statements, and he acted in his own interest in drawing checks, paid contrary to two-signature instructions, and in not disclosing true state of account to other officers, did not affect his authority to bind corporation, so that delivery of passbook, statements, and canceled checks and vouchers to him was notice to company, in absence of showing that bank or its officers were parties to bad faith.

4. **Appeal and error ⬳1041(2)—Pleading ⬳236(3)—Refusal to permit second trial amendment of complaint in action against bank for money paid on unauthorized checks held within court's discretion and harmless.**

In corporation's action against bank for money paid on checks drawn by plaintiff's secretary, refusal to permit plaintiff to file second trial amendment, alleging that defendant knew of plaintiff's course of business to have checks approved by superintendent, and that plaintiff's president first learned of irregularities after long absence from state, *held* within court's discretion and harmless, in view of evidence negativing right of recovery.

5. **Banks and banking ⬳154(7)—Corporation secretary's testimony that his statements to directors did not correspond with bank's statements of corporation's account held properly excluded as immaterial in action for money paid on his unauthorized checks.**

In corporation's action for money paid on its secretary's unauthorized checks, refusal to permit plaintiff to show by secretary that his statements to directors did not correspond with bank's statements of account *held* not error, such question being immaterial in absence of evidence of fraud and collusion by bank or its officers.

6. **Trial ⬳56.**

Exclusion of testimony already before jury is not error.

7. **Appeal and error ⬳1048(6)—Exclusion of testimony on cross-examination of defendant's witness whose evidence is not considered in determining correctness of directed verdict for defendant, if error, held harmless.**

In corporation's action against bank for money paid on unauthorized checks, drawn by plaintiff's secretary, who was witness for defendant, exclusion of his testimony on cross-examination that his statements to directors did not correspond with bank's statements of account *held* harmless, if error; his evidence not being considered in determining correctness of directed verdict for defendant.

8. **Evidence ⬳357—Letter of corporation president to secretary, expressing regret at having to dispense with his services, held admissible in corporation's action for money paid on his unauthorized checks.**

In corporation's action against bank for money paid on unauthorized checks drawn by plaintiff's secretary, letter to him from its president, expressing regret at having to dispense with his services because of business depression, *held* admissible.

9. **Appeal and error ⬳1052(8)—Admission of letter, independently of which directed verdict for defendant was proper, held harmless, if error.**

In corporation's action against bank for money paid on unauthorized checks drawn by plaintiff's secretary, admission of letter to him from plaintiff's president, expressing regret at having to dispense with his services, *held* harm-

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction November 17, 1926.

less, if error, where directed verdict for defendant was proper independently of such letter.

Appeal from District Court, Bastrop County; J. B. Price, Judge.

Action by the Calvin Coal Company against the First National Bank of Bastrop. Judgment for defendant, and plaintiff appeals. Affirmed.

O. B. Black and Douglas & Carter, all of San Antonio; for appellant.

Maynard & Maynard, of Bastrop, and C. L. Black, of Austin, for appellee.

McCLENDON, C. J.  Suit by Calvin Coal Company against First National Bank of Bastrop for $4,099, alleged balance due the coal company upon deposit account with the bank opened on the 19th day of November, 1919, and closed on the 23d day of March, 1925. The coal company claimed that the amount of this balance had been wrongfully paid out by the bank upon checks drawn by H. L. Jenkins and unauthorized because not approved by R. W. Waugh, in accordance with instructions given by the coal company to the bank at the time the account was opened. The bank defended in the main on the ground that it had made during the period 27 statements of account accompanied by canceled checks and vouchers which were returned to the coal company, and no objections to any items were ever made by the latter, by reason of which it was urged that the plaintiff could not recover upon the doctrine of stated account and estoppel. Defendant also pleaded limitation and authority in Jenkins to draw the checks in controversy. There was a jury trial, but upon conclusion of the evidence the court directed a verdict in favor of defendant and rendered judgment accordingly. From this judgment the coal company has appealed.

The controlling question in the case is whether the trial court committed error in directing a verdict in favor of the bank.

[1] Viewing the evidence most strongly in the bank's favor, it will support the following findings: Prior to November, 1919, the Calvin Coal Company, a corporation, conducted its business office in San Antonio, Texas. Its mines were at Calvin, not far from the town of Bastrop, in Bastrop county. W. C. Silliman was its president, general manager, and largest stockholder. A few days before the account was opened, Jenkins was employed as acting secretary of the corporation and Waugh as superintendent. Jenkins' duties gave him full charge of the office, books, and the fiscal affairs of the corporation, while Waugh superintended the mines. About this time it was determined to move the bank account of the corporation from San Antonio to Bastrop and conduct the business of the corporation at Calvin. Silliman contemplated leaving the state for his health, and the entire conduct of the company's affairs was turned over to Jenkins and Waugh, under division of duties as above stated. On November 18, 1919, Silliman addressed a letter to the bank advising of the removal of the offices to Calvin and the decision to open an account with the bank. The letter contained the following paragraph:

"During my absence, and unless otherwise notified, all checks deposited with you will be indorsed by R. W. Waugh, Supt., and all checks signed by S. H. Jenkins, Actg. Secretary, and approved by R. W. Waugh, Supt."

On the following day Silliman went to the bank with Jenkins, delivered the letter to the cashier, and stated orally to him the matters contained in the letter. At the same time an account was opened and a deposit made.

On January 20, 1920, the stockholders of the coal company met and elected Waugh and Jenkins to the directorate, and on the same day Waugh was elected by the board of directors as acting vice president, and Jenkins as secretary and treasurer, of the corporation. The duties of the treasurer as evidenced by the by-laws of the coal company were as follows:

"The treasurer shall have custody of all of the funds and securities of the corporation which may have come into his hands. When necessary or proper he shall indorse on behalf of the corporation for collection checks, notes, and other obligations, and shall deposit same to the credit of the corporation in such bank or banks as the board of directors may designate. He shall sign all receipts and vouchers for payment made to the corporation. He shall sign checks made by the corporation and pay out and disburse the same under the direction of the board of directors. He shall sign with the president, or such other person or persons as may be designated by the board of directors, all authorized promissory notes and bills of exchange, bonds, and other securities of the corporation. Whenever required by the board he shall render statements of his cash account, and shall enter regularly, in the books of the corporation to be kept for that purpose, full and accurate accounts of all moneys received, and paid, by him on account of the corporation. He shall perform all duties incident to the position of treasurer, subject to control of the board, and such other duties as may be imposed upon him by the board of directors, and shall give bond in such sum as the board of directors may require."

About ten days after this meeting Silliman went to California, where he remained until the following fall, when he returned to San Antonio and spent the winter in Texas. From that time until 1925, he spent his summers in California or elsewhere outside of Texas and his winters in Texas. During that period he was in Texas about six months of each year. During the time he was in Texas he went to Calvin about once a month and spent several days on each visit, looking into the affairs of the corporation. During the period in which the account was kept with the bank, deposits

and checks amounted to $375,071.77, the account balancing on March 23, 1925, the day it was closed. During this period the coal company's passbook at the bank was balanced, full statement of the account rendered, and canceled checks and vouchers returned to Jenkins for the coal company 27 different times. The passbook, statements, and vouchers were checked over by Jenkins and placed in the coal company's safe at Calvin, but were not examined by any other officer of the coal company, although they were accessible at all times to Silliman, Waugh, and other officers and directors of the corporation. Jenkins made to Silliman semimonthly statements of the financial affairs of the corporation, and annual statements to the directors. The coal company had a form of voucher or check which had on its face a place for the signature of Jenkins as acting secretary, and on the reverse side blanks showing the items for which the voucher or check was drawn, and a place for the approval signature of Waugh as superintendent. A voucher record was kept, and the vouchers were numbered consecutively. A checking over of the books and records of the corporation for the period the account at the bank ran failed to disclose any record of items in the bank's statement aggregating the amount sued for. Those items began in 1921, and covered the period from that date up to about January, 1925. An auditor was appointed by the court, and his report showed that it was impossible to check the books of the corporation with the bank's statements, because a large number of the checks or vouchers were not produced; among those not produced were those covering the items sued for and additional items amounting to about $14,000, which latter, however, were accounted for and admitted to be correct for the reason that the books of the corporation showed that it received the benfit of these items. Among the canceled vouchers produced, it was shown that in many instances Waugh did not approve the vouchers. In some instances they were not signed by Jenkins, and in a few instances they were not signed by any one; some of the so-called one-signature vouchers were made payable direct to Silliman, and were indorsed and cashed by him, and in one instance, at least, a voucher without any signature was made payable to Silliman and indorsed and cashed by him. At various times during the running of the account loans were made by the bank to the corporation, and these loans were paid by counterchecks drawn by Jenkins alone in his capacity as secretary and treasurer. The items for which the coal company brought suit were counterchecks drawn by Jenkins as secretary and treasurer. One of the employees at the bank testified that some of the proceeds of these items went to the personal credit of Jenkins at the bank. What the various items in question were drawn up for was, however,

not shown by the testimony. Jenkins testified that he had authority to draw the checks, and that they were all for proper items, chargeable to the coal company. The auditors appointed by the court and the other witnesses who examined the coal company's books testified, however, that there was nothing in the books from which these items could be identified as having ever been taken into account. There was no pleading by the coal company of any fraud on the part of the bank or any of its officers, or of collusion between the bank or its officers and Jenkins. Nor would the evidence warrant an inference that there was such fraud or collusion. Silliman and Waugh testified that they had no knowledge of the drawing of the counterchecks by Jenkins until March, 1925; and Waugh further testified that the semimonthly and annual statements which Jenkins made were in accordance with the books of the company, but would not check with the bank account. During the entire period the account ran there appears to have been no audit of the books of the company, and no examination of the bank account by any officer or agent of the coal company other than Jenkins.

We think the facts above detailed present a clear case both of account stated and estoppel. The following is from 1 Ruling Case Law, p. 214:

"It is well settled that the entry of the debits and credits in a depositor's passbook by a banking institution, striking a balance, and then delivering the book to the customer with his canceled checks constitutes a rendition of account, so that the retention of the book so balanced by the customer for an unreasonable time without objection to the account as rendered will constitute an account stated."

To the same effect are Weinstein v. Bank, 69 Tex. 38, 6 S. W. 171, 5 Am. St. Rep. 23; San Antonio Bank v. Llano Bank, 92 Tex. 436, 49 S. W. 368; 7 Corpus Juris, p. 639; 1 Corpus Juris, pp. 694, 709, 711.

[2] It is urged by appellant that the case here presented is one of contract, in which the bank agreed to honor checks or vouchers of the coal company only when drawn by Jenkins and approved by Waugh; that the bank violated this contract and the coal company is entitled to recover regardless of whether it was negligent in not examining the bank's statements and the canceled checks and vouchers. It is also urged that the delivery of the passbook, statements, and canceled checks and vouchers to Jenkins did not constitute notice to the coal company, because Jenkins was personally interested in concealing his improper withdrawals from the account. These contentions we do not think are sound. It may be conceded that the original instructions to the bank were that all vouchers or checks should be signed by Jenkins and approved by Waugh, and it may also be conceded that, so long as these instructions

remained unchanged either expressly or by implication, the bank would be liable for paying. checks or vouchers not so drawn. When we, consider, however, that the entire business of the. concern was practically turned over to Jenkins and Waugh, that the alleged improper checks covered a' period from 1921 to 1925, that frequent statements with canceled checks and vouchers were made which were never objected to, we cannot regard the original instructions, conceding that they were made as testified to by Silliman, as being binding upon the bank. Silliman, according to his own testimony, spent about half of each year in Texas, and visited Calvin, looking after the company's business about once a month during that time. He attended the annual meeting of the board of directors each year and kept in touch with the company's business affairs through reports from Jenkins and personal visits to the office at Calvin. The record shows repeated variations from the practice of having two-signature checks or vouchers, and that these variations were participated in in some instances by Waugh and in others by Silliman. The obligations of the coal company at the bank were paid by counterchecks, signed by Jenkins alone, without any voucher record being kept of such withdrawals from the bank account. A most casual examination of the books of the bank would show that the two-signature rule was not followed invariably, and a checking over of any one of the 27 statements covering a period of over five years would have brought forth the information that Jenkins was not following this practice, but was drawing counterchecks on the bank account. The course of business actually followed during practically the entire period, being at variance with the original two-signature check instructions, clearly constituted a waiver of that requirement. It should also be borne in mind that at the time those instructions were given Jenkins was not a director or officer of the company, and that in January, 1920, he was made a director and elected to the position of treasurer, the duties of which office clearly gave him control of the corporation's bank account. Independently, however, of his authority as treasurer as evidenced by the by-laws of the corporation, we think the course of business clearly showed a waiver of the two-signature check requirement.

[3] The fact that the corporation delegated to Jenkins alone the matter of checking over the bank statements, that Jenkins may have acted in his own interest in drawing the items in question, and that it was against his interest to disclose the true state of the bank account to the other officers of the corporation, did not affect his authority to bind the corporation in so far as its dealings with the bank were concerned. It was not alleged nor shown that the bank or its officers were in any way parties to any bad faith on Jenkins' part. The bank acted in accordance with sound business principles and in all fairness in making full and complete detailed statements whenever called for by the corporation, and at the same time returned the evidence in its possession of the debit items on the account. This was all the bank could be expected to do in the premises. If Silliman, Waugh, or the other directors of the corporation were kept in ignorance of the state of the account for the period of five years and of the 27 statements which the bank made during that period, it was due to no fault of the bank, but to the lax business methods of the coal company and its officers in delegating to Jenkins alone the entire custody of its financial affairs and the duty of checking the bank account with the books of the corporation, and the fact that implicit confidence was reposed in Jenkins. It was clearly the duty of the coal company to have the bank account checked within a reasonable time and to determine and report any irregularities. It delegated this duty to Jenkins, and it is bound by Jenkins' acts, even though he may have acted in his own interest or even fraudulently—a question which it is unnecessary to pass upon. Bank v. Allen, 100 Ala. 476, 14 So. 335, 27 L. R. A. 426, 46 Am. St. Rep. 80.

Under the principles laid down in Weinstein v. Bank and San Antonio Bank v. Llano Bank, above, we think a clear case of estoppel is presented. If the bank's statements, canceled checks, and vouchers had been examined within a reasonable time, there is no question but that the counterchecks in question would have been brought to light in the first statement in which they appeared, and further loss would have been prevented. It also appears that many of the checks and vouchers, including all of those involved in the suit, were lost and were therefore not available to the bank, and its position in that regard was altered to its detriment by the failure to examine and report on the several statements. The language of Judge Denman in San Antonio Bank v. Llano Bank, above, is peculiarly applicable to this case.

Appellant contends that this case is ruled by the decision in Coleman Drilling Co. v. First Nat. Bank (Tex. Civ. App.) 252 S. W. 215, by the Amarillo Court of Civil Appeals, in which writ of error was refused. It is unnecessary to consider that case further than to call attention to some essential differences between the facts there and the facts here. That was a case of a payment of forged checks, while here we have the payment of checks drawn by an officer of the corporation. There the jury found that the bank was negligent in not discovering the forgeries; here the question was only one of authority in the treasurer of the corporation to draw the checks without the approval of another officer. There the negligence of the depositor consisted only in his failure to call for his

bank statements for a period of eight months and have them examined; here the statements were called for and rendered, and all canceled checks and vouchers returned to the depositor and remained among its records from the time of the several statements beginning in 1921 until March, 1925. The facts here are wholly different from the facts there, and the case presented comes clearly within the principles announced in the authorities above cited.

The foregoing holdings dispose of the first seven assignments of error.

[4] The eighth assignment complains of the refusal of the trial court to permit appellant to file a second trial amendment. This trial amendment was offered after Jenkins had given his testimony for the defendant. It is alleged, in substance, that defendant knew of the course of business of the plaintiff to have all checks or vouchers against its account signed by one man and approved by another; that Silliman contemplated an extended absence from the state; that this plan was to protect the plaintiff in its account; that Silliman went to California and was there almost continuously until early in 1925, when he for the first time learned that Jenkins in his absence had drawn the irregular checks, received the bank's statements, and failed to report the irregularities to him or any other officer of the bank. These allegations, in our opinion, added nothing to what had already been pleaded. They could not change the evidence, and, assuming that they were embraced in the original pleadings of the plaintiff, still the evidence negatived plaintiff's right of recovery as above shown. It was a matter of discretion with the trial court whether he would allow at that time a trial amendment. There was no showing of any surprise which would excuse the failure to file the pleading before the trial commenced. But, independently of all this, the error, if any, was harmless.

[5-7] The ninth assignment complains of the refusal to permit the plaintiff to develop the testimony from Jenkins with reference to his semimonthly and annual statements, and show in effect that those statements corresponded with the books of the coal company but did not correspond with the bank's statements. This evidence we think was wholly immaterial, and, besides, it was clear from the testimony of Waugh that the evidence was already before the jury. These semimonthly and annual statements were made to Silliman and the other directors, who at all times had access to the books and to the bank account. Whether these statements were contrary to the bank account was wholly immaterial in a controversy between the coal company and the bank, there being no evidence of fraud or collusion between the bank or its officers and Jenkins. The evidence would, of course, have

been admissible if the question of Jenkins' good faith towards his principal had been in issue, and it might also have been admissible as an impeachment of Jenkins' testimony. In determining whether there was any evidence warranting a recovery, however, we have taken the testimony in its most favorable light to appellant. Jenkins was a witness for the defendant, and we have not considered his evidence in reaching the conclusion that the trial court correctly directed a verdict for defendant. The veracity of Jenkins and his good faith vel non towards his principal were not in issue in determining the correctness of a directed verdict. The ruling complained of was harmless, if erroneous.

[8, 9] By the tenth and last assignment appellant complains of the admission in evidence of a letter written by Silliman to Jenkins, on March 12, 1925, expressing regret at having to dispense with Jenkins' services on account of business situation, and the hope that the depression would not last long, and that he might soon be re-employed. The evident purpose of introducing this letter was to show that Silliman was satisfied with Jenkins' services at a time when, according to Silliman's evidence, he was possessed of knowledge of irregularities which he subsequently charged to Jenkins' bad faith. The letter we think was admissible, but even if it was not its introduction was harmless, as the directed verdict was proper independently of this letter or of any conclusions that might be drawn therefrom.

We find no reversible error in the trial court's rulings, and its judgment is affirmed.