**GULF STATES THEATRES OF TEXAS et al., Appellants,**

v.

**Lloyd L. HAYES et al., Appellees.**

**No. 7761.**

Court of Civil Appeals of Texas, Beaumont.

Feb. 26, 1976.

Rehearing Denied March 25, 1976.

Ross N. Sterling, Houston, for appellants.

Tobolowsky & Schlinger, Dallas, James E. Chesnutt, Beaumont, for appellees.

DIES, Chief Justice.

In January 1972 Park Plaza Theatre as landlord leased the theatre to tenant Golden Triangle Theatres, Inc., predecessor of Gulf States Theatres of Texas, Inc., for an initial term from January 1, 1972, to December 31, 1981. In August 1973 Park Plaza, as plaintiff, brought suit against Gulf States, as defendant, seeking an accounting, damages, and cancellation of the lease. In a non-jury trial, plaintiff prevailed [the parties will be referred to as they were below], from which defendant perfects this appeal but only as to the damages awarded ($2,150) and the cancellation of the lease.

The lease provided defendant was to pay plaintiff as rent for the theatre a fixed minimum annual rent of $72,000, plus a percentage rent equal to fifteen percent of the annual "net sales" in excess of $480,000.

The lease contract also had the following stipulations:

"TIME OF OPERATIONS: Tenant [defendant] shall operate its business in an efficient, highclassed, and reputable manner so as to produce the maximum amount of 'net sales' from the leased premises, and shall, except for reasonable periods for repairing, cleaning and decorating, or other circumstances beyond tenant's control, keep the premises open to the public for business during tenant's regular business hours for 365 days a year, with adequate personnel in attendance.

"TYPE OF MOTION PICTURE THEATRES TO BE OPERATED: Tenant especially covenants and agrees to operate the leased premises as deluxe theatres *exhibiting the best motion pictures available for licensing in the City of Port Arthur on a first run basis.* [Emphasis supplied.] Tenant [defendant] acknowledges that it operates other theatres in Port Arthur, Texas, but nonetheless will license the best box office pictures available for exhibition in the theatre auditoriums in the leased premises, in order to produce the highest 'Net Sales' [as that term is hereinafter defined]."

The trial court filed Findings of Fact and Conclusions of Law among which it found defendant had committed material breach of the lease by exhibiting certain films at the Village Theatre (another Port Arthur theatre owned by defendant) which were, at the time of exhibition, the best motion pictures for licensing in the City of Port Arthur on the first run basis. Defendant has points of error complaining of such findings and conclusions.

■ In determining whether there was any evidence to sustain the judgment of the trial court, the appellate court "must presume that the evidence supports not only the express findings made by the district court, but also any omitted findings which are necessary to support the judgment." *Wisdom v. Smith,* 146 Tex. 420, 209 S.W.2d 164, 166–167 (1948). If there is any evidence of probative value to support fact findings of the trial court, the Court of Civil Appeals is without authority to reverse the trial court's judgment and render a take nothing judgment against the plaintiffs on the ground that the evidence is insufficient as a matter of law to support the fact findings. *Woodward v. Ortiz,* 150 Tex. 75, 237 S.W.2d 286 (1951). More recently, it has been restated that where there is evidence of probative force to support the trial court's findings, such findings are binding upon the appellate court and in passing upon such questions the appellate court must consider only the evidence favorable to the findings and reject all evidence to the contrary. *Waters v. Waters,* 498 S.W.2d 236, 242 (Tex.Civ.App.—Tyler 1973, writ ref'd n. r. e.).

The evidence shows that for the year 1971, plaintiff (Park Plaza) had net sales of $496,791 and a net profit of $129,279. When the lease herein referred to was exe-

**408**

cuted, there were three indoor screens in Port Arthur—one at the Village and the two at the Park Plaza. December 23, 1973, defendant opened the Golden Triangle Theatre with three screens. November 21, 1974, defendant enlarged the Village Theatre to three screens indoors.

For the first year of the lease, the Park Plaza had 72.6 percent of the total box office gross for Port Arthur indoor theatres. For the period December 23, 1973, (when Golden Triangle was opened) until November 21, 1974, (when Village was enlarged), the Park Plaza's share of the gross declined to 56 percent, and by May 31, 1975, had declined to 47.6 percent. During this corresponding period, the theatres owned by defendant (Village and Golden Triangle) in Port Arthur rose from 27 percent of the total indoor gross to 52.4 percent. The average daily box office gross for Park Plaza went from $1,340 in 1971 to $1,288.49 in 1972, to $1,143.84 in 1973, to $839.21 by May 31, 1975.

There were seven large gross pictures shown at the Village in 1974 and 1975:

1. "Exorcist"—March 8, 1974–May 16, 1974;
2. "Trial of Billy Jack"—November 18, 1974–December 17, 1974;
3. "Man with the Golden Gun"—December 18, 1974–January 14, 1975;
4. "Macon County Line"—June 26, 1974–August 18, 1974;
5. "Herbie Rides Again"—July 26, 1974–August 15, 1974;
6. "Longest Yard"—November 27, 1974–December 19, 1974, after a one-week showing at Park Plaza; plus
7. "Godfather II"—December 12, 1974–February 4, 1975.

There is evidence that each picture would have done better at the Park Plaza, a larger and better located theatre. In the case of "Longest Yard," a popular and large-gross picture, defendant pulled it out of the Park Plaza after a successful start and moved it to the Village. In its place, defendant showed a "re-run," "Lieutenant Robinson Crusoe." While there is no prohibition in this lease of defendant building or enlarging theatres in Port Arthur, clearly, we believe, the lease contemplated that the best available pictures be shown in the Park Plaza so as to produce the maximum amount of net sales. The evidence shows that the exhibitor is aware of a film's gross potential. So, a film's popularity is almost never a question of "hindsight" as appellant argues.

The evidence that defendant showed the seven large-grossing pictures in the Village (where it was not obligated for the 15 percent rental) supports the findings by the trial court that defendant breached its contract with plaintiff in which defendant agreed to show the best motion pictures available in the leased premises. We also conclude, as did the trial court, that such breach was material and that the lease should be cancelled.

Defendant has points of error complaining that the court erred in awarding plaintiff $2,150 in damages. Such points of error are overruled.

The evidence would support a much higher award in damages. The testimony of one of the expert witnesses showed that Park Plaza's gross would have increased by some $47,000 if the films shown at the Village had been shown at the Park Plaza. According to the lease between these parties the percentage of rental due plaintiff on the additional $47,000 gross would have been $4,337.85, or nearly twice the amount of damages awarded.

Defendant has other points of error complaining about additional findings and conclusions made by the trial court. Inasmuch as this court has agreed with the trial court in its findings and conclusions stated above, such additional points of error become immaterial.

AFFIRMED.