TENNECO, INC., Appellant,

v.

POLK COUNTY et al., Appellees.

No. 7850.

Court of Civil Appeals of Texas, Beaumont.

July 29, 1976.

Stanley B. Binion, Houston, for appellant.

Elvin E. Tackett, Bedford, E. L. McClendon, Jr., Livingston, for appellees.

DIES, Chief Justice.

Tenneco, Inc., as plaintiff below, brought a direct attack on the tax plan of Polk County, Texas, for the year 1975, seeking to prohibit Polk County from assessing plaintiff's natural gas pipeline under allegations that the method of valuation was fundamentally erroneous. Trial was to the court which entered a judgment denying all relief sought by Tenneco, and from which Tenneco perfects this appeal.

The facts show that Polk County's tax plan in the years 1970, 1971, 1972, 1973, and 1974 was to assess ad valorem taxes at 17 percent of cash market value. The Commissioners Court of that county determined that ad valorem taxes for the year 1975 would be assessed at 25 percent of cash market value. In the years 1970, 1971, 1972, 1973, and 1974 Tenneco rendered its three gas pipelines (61.90 miles) at $534,830. This was in accordance with a "state schedule" originated in the early 1930's, and last updated in 1957, as a schedule for values for gas transmission lines. It is agreed that this "state schedule" is only used as a guide and has no status in law. By multiplying 1.47 times Tenneco's rendition of $534,830, the Commissioners assessed Tenneco's property at $786,220, which it contends raised the evaluation from 17 percent to 25 percent. The Commissioners (of Polk County) treated all other property in the county, including other pipelines, the same way.

Tenneco on the other hand contends its 1975 rendition was for 25 percent and not 17 percent, and there is evidence that the state schedule which produced it is used in other districts as a 25 percent rendition. Tenneco has no fee title and no compressor stations in Polk County, only easements and the pipe in the ground. Other than 2,000 feet in 1953 and .15 of a mile in 1950, the lines were built "somewhere around 1945 to 1948."

■ The Texas Constitution, art. VIII, § 1, requires property to be taxed in proportion to its value, which "shall be ascertained as may be provided by law." Art. VIII, § 11, uses the words "at its fair value", while art. VIII, § 20, sets "fair cash market

value" as a ceiling on the assessment for ad valorem tax purposes. These terms are equivalent. *Atlantic Richfield Co. v. Warren Ind. Sch. Dist.,* 453 S.W.2d 190 (Tex.Civ. App.—Beaumont 1970, no writ n. r. e.); *West Texas Hotel Co. v. City of El Paso,* 83 S.W.2d 772 (Tex.Civ.App.—El Paso 1935, writ dism'd).

Our Supreme Court in *City of Austin v. Cannizzo,* 153 Tex. 324, 267 S.W.2d 808, 815 (1954), defines market value as "the price which the property would bring when it is offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no necessity of buying . . . ." See also *West Texas Hotel Co. v. El Paso,* supra at 775.

In applying these guidelines to a natural gas pipeline we are met with very formidable obstacles. They seldom sell and almost never as a parcel, such as the Polk County property. Furthermore, their rates and profits are regulated by the Federal Power Commission, which means: "The fixing of prices, like other applications of the police power, may reduce the value of the property which is being regulated." *Federal Power Com. v. Hope Nat. Gas Co.,* 320 U.S. 591, 601, 64 S.Ct. 281, 286, 88 L.Ed. 333, 344 (1943).

Perhaps the best manner to approach this is the income approach. As our Supreme Court observed in *State v. Austin & N. W. R. Co.,* 94 Tex. 530, 62 S.W. 1050, 1051 (1901): "Persons proposing to sell or buy a railroad, in forming their opinions as to its value, would doubtless consider the condition of its physical properties, but would ultimately reach their conclusion upon the question by careful estimate of the probable net income which its operation will produce."

And that was the approach made in this case. We should state that we have no evidence of the market value of Tenneco's easements or pipe in the ground in Polk County and Tenneco has no compressor stations or other property in Polk County which might make this situation different or unusual.

Mr. Edward S. Pritchard, Jr., testified for the County. He reached his evaluation of Tenneco's property by capitalization of income which he described as "the relationship between net value and total cost of operating a business . . . what is common in the industry, what rate of return will attract money; * * * the arithmetic formula for capitalizing income is simply divide that . . . rate into the income to get the indicated net value." He used the 1974 income, after taxes of Tenneco of $119,625,522. To this he applied a "cap rate" of 7.6 percent which he obtained from the January 1976 issue of Forbes magazine. "Cap rate" means the capitalization of income. The higher the "cap rate" when applied to prospective income stream, the lower the present value. For example, if you wanted a return of 10 percent on your money on a $10,000 annual income, this would indicate you would pay $100,000 for the property. If you wanted a 20 percent return, then you would pay $50,-000. This 7.6 percent "cap rate" gives a value of the entire system of $1,574,033,184. The Polk County section is .198 of the whole (relation of cost of entire system to cost of Polk County segments). This gives his value of $3,116,585 of which 25 percent would be about $780,000. Mr. Pritchard said he should have used Tenneco's earning before taxes. This would have produced a higher evaluation of the Polk County property.

In the landmark case on rate making of the natural gas industry, the Supreme Court of the U.S. (*Federal Power Com. v. Hope Nat. Gas Co.,* supra, 320 U.S. at 603, 64 S.Ct. at 288, 88 L.Ed. at 345) said:

"But such considerations aside, the investor interest has a legitimate concern with the financial integrity of the company whose rates are being regulated. From the investor or company point of view it is important that there be enough revenue not only for operating expenses but also for the capital costs of the business. These include service on the debt and dividends on the stock. Cf. *Chicago & G. T. R. Co. v. Wellman,* 143 U.S. 339, 345, 346, 12 S.Ct. 400, 402, 36 L.Ed. 176, 179,

180. By that standard the return to the equity owner should be commensurate with return on investments in other enterprises having corresponding risks. That return, moreover, should be sufficient to assure confidence in the financial integrity of the enterprise, so as to maintain its credit and to attract capital."

 Here we are looking at the opposite end of the tube from the Supreme Court of the U.S.; but the principle is the same, and, when we apply the principle to Mr. Pritchard's analysis, here is what we find: The depreciated net book value is the figure on which the Federal Power Commission calculates the permitted rate of return of an interstate gas pipeline. If this were applied to the Forbes rate of 7.6 percent, used by Pritchard, the company could earn $89,699,-997 of income. Interest charge on Tenneco's bonds and long term debt is $78,971,-297. The annual dividend on preferred stock is $21,638,241, for a total of $100,609,-538, for a deficit of $10,909,541. And, of course, this allows no dividend for the common shareholders. This method then of reaching the market value of the Polk County property is demonstrably wrong.

As previously stated, Tenneco for several years prior to the year in question made the same renditions. However, this cannot estop it from contesting this assessment. *French Independent School Dist. v. Howth,* 134 Tex. 211, 134 S.W.2d 1036 (1940).

It follows from what we have held that the judgment of the trial court approving the assessment and levy of taxes upon Tenneco's property was erroneous. The judgment is, therefore, reversed, and judgment here rendered, setting aside, vacating, and holding for naught the assessments upon Tenneco's property for the year involved. This judgment, however, is without prejudice to the right of the County to again assess and value Tenneco's property in accordance with law and to collect such taxes as may be due thereon. Tex.Rev.Civ.Stat. Ann. art. 7346 (1960); *Republic Ins. Co. v.*

*H. Park Independent School Dist.,* 141 Tex. 224, 171 S.W.2d 342, 348 (1943).

REVERSED and RENDERED.

STEPHENSON, J., not participating.