TENNECO, INC., Appellant,

v.

POLK COUNTY et al., Appellees.

No. 7850.

Court of Civil Appeals of Texas,
Beaumont.

Oct. 27, 1977.

Stanley B. Binion, Houston, for appellant.

E. E. Tackett, Bedford, for appellees.

KEITH, Justice.

Pursuant to the instructions of the Supreme Court of Texas included in its opinion in *Polk County v. Tenneco, Inc.,* 554 S.W.2d 918 (1977), we have reviewed the assignments of error which escaped mention in our earlier opinion reported in 546 S.W.2d 63. At our request, the parties submitted additional briefs confined to the issues remaining after remand, and the case was submitted on oral arguments by counsel. We affirm for the reasons now to be stated.

We concur with the Chief Justice: the determination in a contested case of the market value of a small segment of a transcontinental gas pipeline is "not an easy question to resolve." 554 S.W.2d at 921 However, our task has been simplified by the holding of our Supreme Court "that there was evidence tending to support the trial court's factual determination of a market value of $3,144,880 for the pipelines." 554 S.W.2d at 924 This was an adverse

determination of Tenneco's "no evidence" point after the Court had considered only the evidence and inferences which supported the trial court's finding. *Lucas v. Hartford Acc. & Indem. Co.,* 552 S.W.2d 796, 797 (Tex.1977).

Our review of the factual sufficiency of the evidence to support the findings of the trial court has been under a different standard: we have reviewed the record as a whole under the standards laid down for our use. See, e. g., *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error", *38 Tex.L.Rev. 361 (1960).*

■ The trial court filed extensive findings of fact accompanied by many conclusions of law, all of which were favorable to the taxing authority and adverse to the taxpayer. Additionally, the court refused many of the additional findings requested by Tenneco. In a case handed down very recently, *Central National Bank v. Booher,* 557 S.W.2d 563 (Tex.Civ.App.—Beaumont, 1977), Justice Clayton announced the rule applicable to the case at bar in these words:

"It is well-settled that the trial court's findings carry the same weight as jury findings by which we are bound, if such findings are supported by probative evidence. In a non-jury case, the trial court is the judge of the credibility of the witnesses and the weight to be accorded their testimony. *Johnson v. Lane,* 524 S.W.2d 361, 363 (Tex.Civ.App.—Dallas 1975, no writ), and cases cited therein; accord, *Gulf States Theatres of Texas v. Hayes,* 534 S.W.2d 406 (Tex.Civ.App.— Beaumont 1976, writ ref'd n. r. e.). From a review of the evidence we are of the opinion the findings of the trial court are supported by probative evidence. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965)." 557 S.W.2d p. 564

■ As noted by the Supreme Court: "When the question of market value is central to the taxpayer's claim, as here, that question is one of fact for the fact finder." 554 S.W.2d at 920 From our earlier statement, it is apparent that the trial court, acting as the fact finder in this nonjury trial, found market value in favor of the county taxing authority. Our sole responsibility, under these circumstances, is to determine the factual sufficiency of the evidence to support the finding.

■ It would serve no useful purpose to recount at length the testimony of the witness Pritchard concerning market value. Tenneco's counsel criticizes this testimony, saying that he confused gross profit with net profit and was badly mistaken in his so-called "cap rate". Nevertheless, Pritchard's testimony was accepted by the trier of the facts and Tenneco's present criticism goes to the weight and not to the admissibility of such testimony. Considering the record as a whole, as we are required to do in this review, we find that the evidence is factually sufficient to support the trial court's findings of fact and the judgment upholding the assessment.

■ Under these circumstances, we do not find it necessary to pass upon the weight, if any, to be given to the testimony of the witness Bledsoe. Too, Tenneco's expert testimony as to the market value of its system simply raised a question of fact for determination by the court. Such expert testimony did not require acceptance by the trial court. *Broussard v. Moon,* 431 S.W.2d 534, 537 (Tex.1968), and authorities therein cited.

■ We have applied the law contained in the three cases brought to our attention with the recommendation that they might be "helpful",* to the facts established in the trial. Having done so, we are of the opinion that Tenneco has not discharged the onerous burden cast upon it by the law set forth in such cases. Tenneco has failed to establish, factually, either an unequal or discriminatory assessment (as required in *Bernhardt*) and has also failed

---

* *Bernhardt v. Port Arthur Independent School District,* 159 Tex. 488, 324 S.W.2d 163 (1959); *Dallas County v. Dallas National Bank,* 142 Tex. 439, 179 S.W.2d 288 (1944); and *City of Waco v. Conlee Seed Co.,* 449 S.W.2d 29 (Tex. 1969).

in its effort to show that the assessment (if in excess of market value) was grossly excessive under the rationale of *Conlee Seed.*

Having reviewed the record in accordance with the mandate of the Supreme Court, and finding no error, the judgment of the trial court is AFFIRMED.

DIES, Chief Justice, concurring.

I concur with the majority that since our Supreme Court has found that the matters complained of by Tenneco go to the weight rather than the propriety of the evidence, we should affirm the judgment of the trial court.

However, since all agree of the difficulty of assessing a segment of a gas pipeline for ad valorem taxes, it is hoped that these comments may improve the task in future assessments.

It is undisputed that Tenneco, Inc., is regulated by the Federal Power Commission as to the rates it may charge for interstate gas. These rates or earnings are mostly determined by the net book value, which is the original cost less depreciation set by the commission. The lines involved here were constructed many years ago, and it is undisputed the cost of reproduction (same materials) or replacement would be several times more today. So, today's cost of reproduction, since it is not considered by the Federal Power Commission in setting rates, is at best an uncertain method to determine market value.

Realizing this, Mr. Pritchard (for Polk County) and Mr. Green (for Tenneco) made their appraisals on the capitalization of income approach—the relationship between net value and the total cost of operating a business.[1] Mr. Pritchard used the 1975 net income of Tenneco as its probable future earnings—about $119,000,000. Mr. Green used a slightly smaller figure.

Their main difference was in the selection of the "cap rate". Pritchard chose 7.6 percent, Green 11 percent. The higher the "cap rate", the lower value figure obtained. A one percent change in the "cap rate" in Tenneco's case results in an almost 10 percent change in the estimated value ($100,000,000).

Pritchard's 7.6 percent "cap rate" (13.1 times the net profit of $119,000,000) results in a total value of $1,574,033,184 for the entire system, of which Polk County has .198 percent.

The depreciated net book value of Tenneco as allowed by the Federal Power Commission (on which their rates are based) is $1,180,263,117. Applying Pritchard's 7.6 percent to this would produce an income of some $89,000,000, an insufficient sum to satisfy the requirements of *Federal Power Commission v. Hope National Gas Co.,* 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1943).[2]

Tenneco's annual interest charge on bonds and long term debt is $78,971,297. The annual dividend on preferred stock is $21,638,241; so, using the income of Pritchard's "cap rate" would produce a deficit of over $10,000,000 and leave nothing for the common stockholders.

Of course, net book value and market value are not the same, but unless a prospective buyer was willing to accept a lesser rate of return than the regulatory commission allows, he would want to stay close to the net book value.

It is for these reasons I feel Mr. Pritchard's "cap rate" is unrealistic.

The other witness value for the County, Mr. Bledsoe, made a schedule based on present costs of reproduction, less depreciation. He would not identify his source of data, admitted his figures were a "guide", and stated that the schedule covered pipelines other than gas.

---

1. If a purchaser wanted a return of 10 percent on his investment on a $10,000 income, this would indicate the purchaser would pay $100,000 for the property.

2. Enough revenue not only for operating expenses but also for the capital costs of business (service on the debt and dividends on the

stock); return to the equity owner commensurate with return on investments in other enterprises having corresponding risks; a return sufficient to assure confidence in the financial integrity of the enterprise, so as to maintain its credit and attract capital.

A prospective purchaser of a regulated gas pipeline would only be interested in buying income. If that income is wholly regulated by the Federal Power Commission, the market value of that pipeline would be mainly determined by the allowed income. Any assessment by any taxing authority should take this into account.