**FIRST NATIONAL BANK OF MERCEDES, Texas, Appellant,**

v.

**LA SARA GRAIN COMPANY, et al., Appellee.**

No. 2209cv.

Court of Appeals of Texas, Corpus Christi.

Oct. 7, 1982.

Rehearing Denied Nov. 18, 1982.

Ralph L. Alexander, Kelley, Looney, Alexander & Sawyer, Edinburg, for appellant.

Ferriel C. Hamby, Edinburg, William E. York, McAllen, for appellee.

Before UTTER, KENNEDY and GONZALEZ, JJ.

## OPINION

GONZALEZ, Justice.

This case primarily involves the question of a Bank's liability, when it pays checks and allows withdrawals on less than the required number of signatures. In April, 1975, Plaintiff-appellee, La Sara Grain Company, opened a checking account at the First National Bank of Mercedes, Texas, Defendant-appellant. La Sara gave the Bank a corporate resolution requiring the signatures of two persons to sign all its checks. Over a three and a half year period, the Bank honored La Sara's checks with only one signature. La Sara brought suit against the Bank alleging negligence, breach of warranty, breach of contract, fraud and under the Deceptive Trade Practices Act.

The Bank alleged that they were not liable under the provisions of Tex.Bus. & Com.Code 4.406(d) because La Sara did not discover and report payment of these checks within one year from the time the statements were made available to them and also that the claims were barred by limitations, waiver, apparent authority and estoppel. La Sara filed special exceptions to the Bank's answer and alleged that the provisions of Tex.Bus. & Com.Code § 4.406 and the defense of "apparent authority" were not applicable as a matter of law. The trial court sustained these exceptions.

After a trial without a jury, the trial court rendered a judgment against the Bank. The Bank appeals from this judgment. We reverse and render a take nothing judgment.

The relevant facts are as follows: La Sara is a Texas Corporation engaged in the business of buying and selling grain. Upon the death of La Sara's General Manager in 1974, La Sara discovered that the General Manager had utilized corporate funds for his personal use. Harold Jones was hired General Manager and in April of 1975, La Sara opened a checking account with the Bank. It provided the Bank with a corporate resolution that specified that any two of four individuals listed in the resolution were authorized to sign checks. Jones was one of the four. (A copy of this resolution is attached to this opinion as an appendix "A".) The Bank was also provided with a signature card. Sometime during the circulation of the signature card between the four individuals, the card was altered or changed to strike out the requirement of two signatures and to require only one signature. (A copy of this card is also attached to this opinion as appendix "B"). The record is not clear whether the corporate resolution or the signature card was furnished to the Bank first or if they were furnished at the same time. The record does show, however, that La Sara's bookkeeper was the last one to sign the signature card and he testified that when the card was presented to him, it provided for only one signature.

During the next three and a half years, (from April 9, 1975 to the Fall of 1978), in contravention of the corporate resolution but in keeping with the signature card, several hundred checks were drawn and paid by the Bank on La Sara's account with only Jones' signature. Also during this time, several checks marked "for deposit only" with La Sara listed as the payee were deposited into Jones' personal account. In some instances the deposits were split with a portion going into La Sara's account and a portion going into Jones' personal account. Without a corporate resolution, Jones also borrowed money from the Bank in the name of La Sara with some of these proceeds also being split between the two accounts. Each month the Bank sent the customary bank statements to La Sara.

In the Fall of 1978, Jones was fired by La Sara because of suspected dishonesty. After an audit it was determined that La Sara

had lost approximately Three Hundred Forty-Two Thousand Seven Hundred Ninety Dollars and 69/100 ($342,790.69).[1] In June, 1979, La Sara sued the Bank, Fidelity and Deposit Company of Maryland, and others. This suit was settled and La Sara assigned a portion of this suit to them. The suit as to other defendants was severed.

In the trial below, the Bank answered that during the period in question, it sent La Sara monthly statements accompanied by the checks it had paid in good faith but that La Sara had failed to exercise reasonable care and promptness to examine the statements and to discover any unauthorized signatures or alterations and to promptly notify the Bank of any defects. The Bank contended that they were not liable under the provisions of 4.406 of the Tex.Com. & Bus.Code. The Bank further contended that since La Sara allowed this conduct to continue for all of this time, the Bank relied on accepting Jones' signature alone on all of the transactions and this caused the Bank to believe that such transactions were proper and, therefore, La Sara is now barred from any recovery under the doctrine of waiver, apparent authority, estoppel, and the two and four year statute of limitations.

This was primarily a "documents" case. The other evidence was brief. It can be summarized as follows:

Harold Lee Jones, the general manager, was called to testify and he asserted his Fifth Amendment right to self-incrimination. The other three persons who were authorized to sign the checks in question testified regarding the circumstances surrounding the signing of the corporate resolution and the signature card. The president of the Bank testified that the Bank filed the corporate resolution in the bookkeeping department and filed the signature card in the check file where it was kept for comparison of signatures on the checks. From the beginning, the Bank acted as if only one signature was required on all transactions. It allowed Jones to split de-

posits, make withdrawals and make loans at the Bank in La Sara's name solely on his signature.

An accountant testified that he performed an audit of La Sara's and Jones' personal accounts and after allowance for deductions for which La Sara received benefit, Jones had misapplied Three Hundred Forty-Two Thousand Seven Hundred Ninety Dollars and 69/100 ($342,790.69). He further testified that Jones was not the only La Sara employee to have access to the monthly statements from the Bank. Other employees reconciled these monthly statements and during the time in question, accountants prepared financial statements and federal income tax returns. The documents to the relevant transactions were admitted into evidence. Other than the testimony for attorney's fees, this was the sum of the evidence.

Ninety-one findings of fact and nineteen conclusions of law were filed by the trial court. No purpose is served by reciting them. Suffice it to say that the findings of fact cover every conceivable "fact" necessary for plaintiff to recover. Often times they contradict one another.

Based on these findings, the court entered a judgment against the Bank in the total amount of Nine Hundred Eleven Thousand Three Hundred Twenty-Nine Dollars and 66/100 ($911,329.66), this sum representing actual damages, interest, attorney's fees and the trebling of certain portions of the judgment. Appellant brings twenty-one points of error wherein they challenge over half of the findings of fact contending that there is no evidence to support them or in the alternative they are based on insufficient evidence. Appellant also contends that the trial court committed error in sustaining the special exceptions and in holding that a lack of a required signature where more than one signature is required *is not* an unauthorized signature under 4.406 of Tex.Bus. & Com.Code.

---

1. Jones was charged with violating the law by both federal and state authorities. He pled guilty, was placed on probation and ordered to make restitution.

In reviewing a judge tried case in which findings of facts and conclusions of law are filed and challenged on appeal, this Court is bound by such findings if they are supported by probative evidence. *Tenneco, Inc. v. Polk County,* 560 S.W.2d 416 (Tex. Civ.App.—Beaumont 1977, no writ). However, such findings are not conclusive where the reviewing court has a complete record before it. *Swanson v. Swanson,* 148 Tex. 600, 228 S.W.2d 156 (1950); *Frost v. Molina,* 595 S.W.2d 184 (Tex.Civ.App.—Corpus Christi 1980, writ dism'd). In determining the merit of the Bank's no evidence points we consider only the evidence and inferences tending to support the trial court's findings and disregard any contrary evidence and inferences. *Garza v. Alviar,* 395 S.W.2d 821, (Tex.1965); *Bodine v. Welders Equipment Co.,* 520 S.W.2d 407, (Tex.Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.). In the present case, we do have a complete record before us.

### Relationship of Bank and La Sara

"The relationship between a bank and its depositor is that of debtor and creditor with title to the deposited funds passing to the bank.... The bank is under the duty of disbursing the funds on deposit in accordance with the directions of the depositor.... In suits against a bank to recover deposits, the burden of proving payment under authority from the depositor is on the bank." *Mesquite State Bank v. Professional Invest. Corp.,* 488 S.W.2d 73, 75 (Tex. 1977). Also, 9 Tex.Jur.3rd Banks § 149, p. 122 (1980) states: "The relationship between banker and depositor is a voluntary one of contractual nature...." Therefore, there can be no question but that the corporate resolution established the terms of this contractual relationship.

Generally, the signature card is merely a vehicle or a tool utilized by a Bank to ensure that the signatures on the checks correspond to those of the signature card. If a corporate resolution and a signature card on the same account are in variance with one another regarding the requisite number of signatures, the resolution pre-vails. Therefore, at the time the Bank account was open, the Bank impliedly warranted and agreed with La Sara that all transactions between La Sara and the Bank would require at least two of the four authorized signatures.

Generally, whenever the Bank pays checks on less than the required number of signatures, the Bank is liable on the theory of negligence, breach of contract, or under the Uniform Commercial Code. However, the Bank can escape liability in some situations under the theory of lack of consideration, the depositor's failure to examine statements and notify the Bank under common law, or under the U.C.C. provisions, where there is no loss or damage to the depositor, or under the defense of acquiescence in or notification of payment, estoppel or waiver of the signature requirement. 7 A.L.R. 4th 655 (Annot).

### Issues

The main issues in this appeal are: (1) when the Bank honors a check or withdrawal on less than the required number of signatures, is the signature an "unauthorized signature" within the meaning of 4.406 of the Tex.Bus. & Com.Code; (2) whether the Bank is liable under any theory of recovery that was pled and proved; (3) whether the Bank escapes liability under 4.406(d) of Tex.Bus. & Com.Code or under the defense of apparent authority, estoppel, waiver of signature requirement or statute of limitations.

### Bank's Liability Under 4.406 Tex.Bus. & Com.Code

4.406 Tex.Bus. & Com.Code provides as follows:

"(a) *When a bank sends to its customer a statement of account* accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the *customer must exercise reasonable care and promptness to examine the state-*

ment and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.

(b) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by Subsection (a) the customer is precluded from asserting against the bank

(1) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

(2) an unauthorized signature or alteration by the same wrongdoer or any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

(c) The preclusion under subsection (b) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).

(d) *Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (Subsection (a) discover and report his unauthorized signature or any alteration on the fact or back of the item* or does not within three years from that time discover and report any unauthorized endorsement is precluded from asserting against the bank such unauthorized signature or endorsement or such alteration." (emphasis added).

Therefore, 4.406(d) of the Tex.Bus. & Com.Code provides that regardless of the care or lack of care of either the customer or the bank, a customer who does not within one year after the statement and items are made available to him discover and report his unauthorized signature or any alteration on the item or does not within three years discover and report any unauthorized endorsements, is precluded from

asserting against the bank such unauthorized signature or endorsement.

We have been unable to find any Texas case that has considered the question of whether the absence of a signature where more than one is required constitutes an unauthorized signature within the meaning of 4.406. Across the country, there is a split of authority on this issue. See, 7 A.L.R. 4th 655 & 1111 (Annot.).

*Rascar, Inc. v. Bank of Oregon,* 87 Wis.2d 446, 275 N.W.2d 108, 110–111 (Wis.App. 1978) was a case where a corporate customer of a Bank brought suit to recover for checks paid by the bank on only one signature where two were required. The trial court entered judgment for the Bank. The Wisconsin Appellate Court affirmed and said:

"If the absence of Bartus' signature results in an "unauthorized signature" then Rascar cannot recover from the bank under the U.C.C. because it did not report the unauthorized signature within the one-year time period required by sec. 404.406(4), Stats.

Section 404.406(4), Stats., refers to the signature of the "customer". A customer is any person having an account with a bank. Section 404.104(1)(e), Stats. Under the U.C.C., "person" includes an individual or an organization. Section 401.-201(30), Stats. The customer is Rascar, Inc. An unauthorized signature is one made without actual, implied, or apparent authority. Section 401.201(43), Stats.

\*  \*  \*  \*  \*  \*

When a bank's customer directs the bank to pay only those checks which bear two signatures, a two signature check is the "authorized signature" of the customer. The customer has not authorized the bank to pay one signature checks, so a check with only one signature does not have an authorized signature.

Because Rascar, Inc. did not report its unauthorized signature to the defendant within the one-year period provided in the statute, its claims under the U.C.C. are barred."

The case of *Pine Bluff National Bank v. Kesterson,* 257 Ark. 813, 520 S.W.2d 253, 257 (1975) involved a fact situation where a trust fund checking account required three signatures, and only one of the three persons authorized to sign actually signed the checks in question. Under such facts, the Arkansas Supreme Court held that the signature of only one of the three authorized to sign was an "unauthorized signature" within the purview of Section 4.406 of the Uniform Commercial Code in effect in Arkansas. In this connection, the Court stated:

> "From reading the statute, the committee comment and the U.C.C. definition, we conclude that the coverage of section 85–4–406 is much broader than that and that the check was paid upon an "unauthorized signature". The authorized signature of Trust Fund required the joint signatures of three trustees. Any purported signature of Trust Fund with fewer signatures was an unauthorized signature. *Id.* at 257 Ark. 821, 520 S.W.2d 258."

Section 1.201(43) of the Tex.Bus. & Com. Code defines an unauthorized signature as: " 'Unauthorized' signature or endorsement means one made without actual, implied or apparent authority and includes a forgery".

■■■ Applying this section to 4.406, it is obvious that Jones' signature on a check standing alone, would be made without actual, implied or apparent authority to sign La Sara's checks. The only authorized signatures on La Sara would be a signature containing the name of the corporation plus two signatures of the four persons named in the resolution. The trial court made findings of fact and conclusions of law to the contrary. We believe that since 4.406(d) of the Tex.Bus. & Com.Code endeavors to provide finality that is important for the security of banking institutions, the better view is, and we hold as a matter of law, that when a bank honors a check or withdrawal on less than the required number of signatures, the signature *is* an unauthorized signature within the meaning of 4.406(d).

Therefore, it was error for the trial court to hold to the contrary.

### Bank's Liability Under The Deceptive Trade Practices Act

■■■ Processing of checks by a bank is within the definition of "services" under the Tex.Bus. & Com.Code § 17.41 et seq. *Farmers and Merchants State Bank of Krum v. Ferguson,* 617 S.W.2d 918 (Tex. 1981). A plaintiff has the burden to prove all of the elements of his cause of action under the DTPA as the act was defined at the time the cause of action arose. *Riverside National Bank v. Lewis,* 603 S.W.2d 169 (Tex.1980).

■ In our case, there was no evidence of a false, misleading or deceptive act or practice as such by the Bank. However, when the account was opened in April, 1975, the Bank impliedly warranted that it would not in any way deal with La Sara's account unless two of the four signatures were on all transactions. This not withstanding, from the very inception the Bank began to honor checks with only one signature. Over a three and half year period, over a hundred transactions (checks, loans, split deposits and verbal transfers of funds) were made with only one signature. The "deceptive act or practice," was the Bank honoring these transactions in breach of their implied warranty. However, there was only one contract and one warranty. The Bank had a continuous obligation to honor the two signature requirement. Thus, we have a continuous breach of that warranty that began in 1975. Since the cause of action arose in 1975 when "services" under DTPA § 17.45(2) had the commercial and business use exclusion, recovery under the DTPA cannot be had.

### Bank's Liability Under Breach of Contract

■ During the period in question, La Sara never complained to the Bank of any irregularities. They led the Bank to believe that everything regarding their account was in order. The record shows that persons other than the General Manager had access to and reconciled the bank monthly

statements. Not only did other persons reconcile these monthly statements but accountants prepared financial statements and income tax returns for the period in question.

By its silence, did La Sara waive the two signature requirement? Did La Sara cloak the General Manager with apparent authority to transact business in its name with only his signature? Who should bear the loss: The Bank because of its failure to compare the signature card with the corporate resolution or La Sara because it hired the dishonest employee and allowed this conduct to continue for three and a half years?

There are two early Texas cases that have dealt with similar facts but they reached opposite results. Compare *Calvin Coal Co. v. First Nat. Bank of Bastrop,* 286 S.W. 901 (Tex.Civ.App.—Austin 1926, writ dism'd) with *Cline-Clark Co. v. State Trust & Savings Bank of Dallas,* 81 S.W.2d 541, 542 (Tex.Civ.App.—Dallas 1935, no writ). These cases were decided prior to the enactment of the Uniform Commercial Code.

In *Calvin Coal Co. v. First Nat. Bank of Bastrop, supra,* the coal company opened a bank account and advised the Bank that two signatures were required on all checks. The Bank honored many checks with only one signature. For five years the coal company made no objections to the Bank. The coal company brought suit against the Bank for the amount that had been wrongfully paid out. The Bank defended on the grounds that twenty-seven statements have been sent to the bank along with the canceled checks and no objections to any of these items were made. For this reason, the Bank argued the coal company could not recover on the doctrine of estoppel and limitations.

The case was tried to a jury and the trial court directed a verdict in favor of the Bank. The Appeals Court affirmed the judgment and said:

"It is urged by appellant that ... the bank violated this contract (two signature requirement) and the coal company is entitled to recover regardless of whether it was negligent in not examining the bank's statements and canceled checks and vouchers. It is also urged that the delivery of the passbook, statements, and canceled checks and vouchers to Jenkins did not constitute notice to the coal company, because Jenkins was personally interested in concealing his improper withdrawals from the account. These contentions we do not think are sound. . . . A most casual examination of the books of the bank would show that the two-signature rule was not followed invariably, and a checking over of anyone of the 27 statements covering a period of over five years would have brought forth the information that Jenkins was not following this practice. . . . The course of business actually followed during practically the entire period, being at variance with the original two-signature check instructions, clearly constituted a waiver of that requirement. . . . If ... the other directors of the corporation were kept in ignorance of the state of the account ... it was due to no fault of the bank, but to the lax business methods of the coal company. It was clearly the duty of the coal company to have the bank account checked within a reasonable time and to determine and report any irregularities ... we think a clear case of estoppel is presented." 286 S.W. at 903.

We believe that the rationale in *Calvin Coal* is consistent with the rule now codified in 4.406 of the Tex.Bus. & Com.Code. It is apparent, then, that as in *Calvin Coal,* estoppel has been clearly established. Therefore, La Sara is precluded from recovery under any breach of contract theory.

### Bank's Liability Under Negligence Theory

The trial court found that the Bank had actual knowledge of the unauthorized change or alteration of the signature card from a dual to a single signature requirement. There is no evidence to support this finding. The trial court also found constructive knowledge on the Bank's part. However, there is no evidence of what a reasonably prudent bank would have done

under similar circumstances. *Thompson v. Gibson,* 156 Tex. 593, 298 S.W.2d 97 (1957), reversed per curiam, 355 U.S. 18, 78 S.Ct. 2, 2 L.Ed.2d 1, order in compliance, 158 Tex. 231, 310 S.W.2d 564 (1958). Having failed to establish a primary element of its negligence cause of action, recovery cannot be had on this theory.

In summary, under this record the judgment cannot be supported under any theory. Because of our disposition of these points it is unnecessary to consider the other points of error.

There remaining no issues of fact to be considered by the trial court, we reverse and render a take nothing judgment. Tex. R.Civ.P. 434.

The judgment of the trial court is reversed and rendered.

# THE FIRST NATIONAL BANK
## OF MERCEDES, TEXAS

At a meeting of the Board of Directors of the ___LA SARA GRAIN COMPANY___
(Name of Corporation)

held at its office in the City of _____

on ___April 9, 1975___, pursuant to due notice, at which a quorum of the Board was pres-
(Date)

ent, on motion, duly seconded, the following resolutions were unanimously adopted:

RESOLVED, That the following officer or officers of this Corporation,

| Name | Signature | Title |
| --- | --- | --- |
| O. S.Wyatt, Jr. | | President |
| Harold Jones | | Vice President |
| E. C. Thomas | | Secretary/Treasurer |
| Salome Saenz | | Bookkeeper |
| | | |

or ___any two of them___ be hereby authorized to sign the name of this Corporation, drawn on or in
(Any one, or any two of them as desired)

favor of the First National Bank of Mercedes, Texas, including checks payable to the order, for whatever purpose, of the officer or officers signing same.

RESOLVED, also that said Bank be furnished with a certified copy of these resolutions, and is hereby authorized to deal with the officers hereinabove named under said authority unless and until it be expressly notified to the contrary by this Corporation, and said Bank shall at all times be protected in recognizing as such officer or officers so named until notified in writing by registered mail of any change and Resolution of Board of Directors directing a change of officer or officers.

This is to certify that the above is true and correct extract from the minutes of the meeting of the Board of Directors of this Corporation, held ___April 9, 1975___, at which said Resolution was
(Date)

adopted by the Board of Directors, and at a regular meeting of said Board of Directors.

Witness my hand and the seal of the Corporation.

O. S. WYATT, JR.        President.

E. C. THOMAS        Secretary.

(SEAL)

NAME *LA SARA GRAIN* 21-498-1

VICTOR SAFE & EQUIPMENT    CORPORATION ACCOUNT    V° 24702.1

TO First National Bank of Mercedes, Texas

You are authorized to recognize any (two (2)) of the signatures subscribed below in the payment of funds or the transaction of any business for this account. It is agreed that all transactions between you and the undersigned shall be governed by the contract printed on the reverse side of this card.

(* Indicate Number of Signatures Required)    BY

| Signature | Name | Title |
| --- | --- | --- |
| *O. S. Wyatt Jr.* | O. S. Wyatt, Jr. | PRESIDENT |
| *Harold Jones* | Harold Jones | VICE-PRESIDENT |
| *E. C. Thomas* | E. C. Thomas | SECRETARY |
| *Salome Saenz* | Salome Saenz | Bookkeeper |

ADDRESS P. O. Box La Sara, Texas 78561    closed 11/9/79

DATE OPENED    SIGNATURE AUTHORITY DATED    INITIAL DEPOSIT $    ACCOUNT OPENED BY

NEW SIG. REQ. | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |