**LA SARA GRAIN COMPANY, et al., Petitioners,**

v.

**FIRST NATIONAL BANK OF MER-CEDES, Texas, Respondent.**

No. C–1784.

Supreme Court of Texas.

May 23, 1984.

Rehearing Denied July 18, 1984.

William E. York, McAllen, Adams, Graham, Jenkins, Graham & Hamby, Ferriel C. Hamby, Jr., Harlingen, for petitioners.

Kelly, Looney, Alexander & Sawyer, Ralph L. Alexander, Edinburg, for respondent.

SPEARS, Justice.

This action concerns a bank's liability for honoring checks with fewer than the required number of signatures, failing to follow a restrictive endorsement, and other alleged wrongful acts and deceptive trade practices which allowed an employee to embezzle funds from his employer. After a nonjury trial, the district court rendered judgment against the bank for $911,329.66; that figure included actual damages, additional damages under the Deceptive Trade Practices Act (DTPA), interest, and attorney's fees. The court of appeals reversed the judgment of the trial court and rendered judgment that plaintiff La Sara take nothing. 646 S.W.2d 246. We affirm that portion of the judgment of the court of appeals that removed the award of DTPA additional damages. We reverse the judgment of the court of appeals in all other regards, and affirm the trial court judgment for actual damages. We remand the cause for the consideration of a factual insufficiency point and for the recalculation of prejudgment interest.

La Sara Grain Company, a corporation, hired Harold Jones as general manager and opened a checking account with First National Bank of Mercedes in 1975. La Sara filed with the bank a corporate resolution naming the four officers of the corporation as authorized signatories and providing that any two of them could sign checks for the corporation. Jones was one of the officers named in this resolution. The bank also provided La Sara with a signature

card; however, during its circulation among the four officers, the card was altered to require only one signature rather than two. From the spring of 1975 to the fall of 1978, the bank honored checks drawn on La Sara's account bearing the signature of only one officer, ordinarily Jones, the officer in charge of La Sara's day-to-day affairs. During this period, La Sara received monthly statements of its account with the bank.

In the fall of 1978, La Sara fired Jones. An audit subsequently revealed that Jones had embezzled over $300,000. In July of 1979, La Sara filed suit against Jones to recover the amounts embezzled. La Sara thereafter amended its petition to join as defendants Fidelity & Deposit Company of Maryland and the First National Bank of Mercedes. Prior to trial, La Sara settled its claims against Jones and Fidelity. Jones agreed to make restitution; Fidelity paid $90,000 to settle La Sara's claim on a fidelity bond and then intervened in La Sara's suit against the bank, claiming a right to subrogation.[1]

*I. Application of TEX. UCC § 4.406(d)*

La Sara's primary complaint at trial was that the bank had breached the depository contract by paying checks signed only by Jones without the second signature required by the corporate resolution. The bank denied liability. The basis of the bank's defense was that it had sent La Sara monthly statements accompanied by all checks paid, but that La Sara had failed to examine the statements and report the unauthorized signature within the one-year period prescribed by section 4.406(d). Tex. Bus. & Com.Code Ann. § 4.406(d) (Tex. UCC) (Vernon 1968).

Section 4.406 places a duty upon the depositor to promptly examine his bank statement and report to the bank the discovery of any "unauthorized signature or any alteration."[2] *Id.* § 4.406(a). If the depositor

---

1. Although La Sara and Fidelity have filed separate applications for writ of error their arguments are the same and will hereafter be attributed only to La Sara.

2. Tex.Bus. & Com.Code Ann. section 4.406 provides:

fails to comply with this duty, the bank is protected from loss so long as it has exercised ordinary care and paid the item in good faith. *Id.* § 4.406(b), (c). If a depositor does not report an unauthorized signature within one year from the time the statement and items are made available to him, the bank's care or lack thereof becomes irrelevant, *id.* § 4.406(d); at that point, the customer's only claim is that the item was not paid in good faith. *Id.* § 4.406(d).

### A. La Sara's Checks

The courts below interpreted the term "unauthorized signature" differently and therefore disagreed on the application of section 4.406. The trial court rejected the bank's defense under section 4.406. It found that, because Jones's signature was one of four authorized in La Sara's corporate resolution, the checks were not paid on an "unauthorized" signature. The court of appeals, on the other hand, concluded that the bank was entitled to rely on section 4.406, saying "when a bank honors a check or withdrawal on less that the required number of signatures, the signature is an unauthorized signature within the meaning of 4.406(d)." 646 S.W.2d at 252.

The initial issue is whether the checks drawn on La Sara's account were paid on unauthorized signatures. La Sara contends that, because no signatures were forged and the signature of Jones was authorized, section 4.406(d) does not protect the bank. We do not agree.

 An unauthorized signature includes more than just a forgery. *Pine Bluff National Bank v. Kesterson,* 257 Ark. 813, 520 S.W.2d 253, 258 (1975). An unauthorized signature is defined as "one made without actual, implied or apparent authority and includes a forgery", Tex.Bus. & Com.Code Ann. § 1.201(43) (Tex.UCC) (Vernon 1968), and includes a signature made by an agent in excess of his authority. *Id.* § 3.404, comment 1. La Sara's argument that section 4.406 does not apply focuses on Jones's signature rather than that of La Sara, the bank's customer. La Sara's signature required the joint signatures of two officers. Although Jones was one of four authorized to sign, his signature alone was not La Sara's. When the bank paid the checks bearing only one of two required signatures, it paid on an unauthorized signature within the meaning of section 4.406(d).

 La Sara also argues that the checks were not paid in good faith. If so, the bank cannot claim the protection of section 4.406. The time limits of that section apply only to items paid in good faith. *Id.,*

§ 4.406. Customer's Duty to Discover and Report Unauthorized Signature or Alteration

(a) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instruction of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.

(b) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by Subsection (a) the customer is precluded from asserting against the bank

(1) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

(2) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

(c) The preclusion under Subsection (b) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).

(d) Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (Subsection (a)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from *asserting against the bank such* unauthorized signature or indorsement or such alteration.

§ 4.406(a). Moreover, an obligation of good faith is imposed on the performance of every contract or duty within the Code. *Id.* § 1.203. Good faith is defined as "honesty in fact in the conduct or transaction concerned." *Id.* § 1.201(19). The test for good faith is the actual belief of the party in question, not the reasonableness of that belief. *Riley v. First State Bank,* 469 S.W.2d 812 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.).

■■■ La Sara contends that the bank actually knew Jones's signature alone was insufficient, yet paid the checks anyway, and therefore did not exercise good faith. The trial court agreed, finding that the bank had actual knowledge of the unauthorized change of the signature card from a dual to a single-signature requirement. The court of appeals, however, held that there was no evidence to support this finding. At trial, the evidence showed that La Sara's corporate resolution, which the bank required, was in the bank's files; the corporate resolution specified that two signatures were necessary. The bank president testified that the bank would know of anything that was in the files. The bank, a corporation, is bound by the knowledge of one of its agents if that knowledge came to him in the course of the agent's employment. *City of Fort Worth v. Pippen,* 439 S.W.2d 660 (Tex.1969); *Wellington Oil Co. of Delaware v. Maffi,* 136 Tex. 201, 150 S.W.2d 60 (1941). The bank does not contend that the corporate resolution was filed outside the normal course of business. Moreover, the checks were paid pursuant to an obviously altered signature card, and many were deposited into Jones's personal account. The trial court found that, under these facts, the bank knew that Jones's signature alone was not the authorized signature of La Sara. There is evidence supporting that finding. La Sara is entitled to recover for the checks paid on Jones's signature alone, less a credit for the funds from which La Sara benefited.[3]

**B. La Sara's other claims**

In addition to the unauthorized payment of its checks, La Sara complains that the bank failed to follow a restrictive endorsement, allowed Jones to orally transfer money from its account, and paid Jones the proceeds of loans made in La Sara's name. These complaints concern four separate transactions:

1. On July 15, 1977, the Holland Farms check made payable to La Sara and endorsed "For Deposit Only" was split with $40,000 deposited to Jones's personal account and $22,600 deposited to La Sara's account.

2. On May 12, 1977, the bank transferred $14,000 from La Sara's account to Jones's personal account at Jones's oral request.

3. On June 8, 1976, a $19,506 loan was made to La Sara at Jones's request. Proceeds of the loan were used by Jones to purchase a cashier's check payable to the McCrabb Brothers.

4. On July 22, 1977, a $35,000 loan was made to La Sara at Jones's request. The proceeds were split with $12,000 deposited to Jones's personal account and $23,000 deposited to La Sara's account.

The court of appeals did not expressly address these claims but implicitly held that section 4.406(d) barred La Sara's right to recovery. La Sara argues that section 4.406(d) does not shield the bank from liability. We agree.

■ In *Fultz v. First National Bank,* 388 S.W.2d 405 (Tex.1965), we held that a bank breached its depository contract when it failed to follow its depositor's restrictive endorsement, "For Deposit Only." Although *Fultz* predates the adoption of the Uniform Commercial Code, the rule remains unchanged. Under the Code, a depositary bank is liable for paying an instrument other than in accordance with the terms of a restrictive endorsement. Tex. Bus. & Com.Code Ann. §§ 3.206(c), (d), 3.419(c), (d) (Tex.UCC) (Vernon 1968).

---

**3.** The trial court made this calculation in its judgment for actual damages. The bank has

not contended that the trial court's figures were inaccurate.

The bank also breached its contract by transferring $14,000 from La Sara's account at Jones's oral request. When a customer deposits funds with a bank, the bank impliedly agrees to disburse those funds only in accordance with the depositor's instructions. *Mesquite State Bank v. Professional Investment Co.*, 488 S.W.2d 73, 75 (Tex.1973); Tex.Bus. & Com.Code Ann. §§ 3.404(a), 4.401(a) (Tex.UCC) (Vernon 1968). La Sara did not authorize the bank to disburse funds from La Sara's account at the oral request of Jones. Section 4.406(d) provides no defense to the bank because no unauthorized signature was used to obtain the $14,000 withdrawal.

Finally, the bank does not assert section 4.406(d) as a defense to the loans in dispute. Instead, the bank argues that Jones had the authority to borrow money in La Sara's name and that La Sara is estopped to the extent it has gained the use and benefit of these loans. The record shows, however, that La Sara did not have the use and benefit of all funds borrowed in its name. La Sara established that the first loan was used by Jones to purchase a cashier's check payable to a third party, and that a portion of the second loan was deposited directly into Jones's personal account.

We hold that La Sara is entitled to judgment against the bank for the $40,000 loss caused by the bank's failure to follow La Sara's restrictive endorsement, for the $14,000 withdrawal from La Sara's account made without proper authorization and for $31,506 representing the sum the bank delivered to Jones but charged to La Sara as proceeds from two loans.

### II. La Sara's DTPA Claim

La Sara also contends that the bank has violated the Deceptive Trade Practices—Consumer Protection Act. Tex.Bus. & Com.Code Ann. §§ 17.41–.63. (Vernon Supp.1984). La Sara claims that as part of the depository contract the bank impliedly warranted the dual-signature requirement adopted in La Sara's corporate resolution. La Sara alleges that the bank breached this warranty when it paid checks signed only by Jones and is therefore liable for treble damages under section 17.50(a)(2). In addition to the checks, La Sara contends that the bank's practice of splitting items payable to La Sara between the accounts of Jones and La Sara, of making loans in La Sara's name without proper authorization, and of allowing Jones to orally withdraw money from La Sara's account violated the general prohibition against "(f)alse, misleading or deceptive acts or practices in the conduct of any trade or commerce" contained in the 1977 act. *Id.* §§ 17.46(a), 17.50(a)(1). The trial court agreed.

The court of appeals reversed the judgment of the trial court and rendered judgment that La Sara take nothing on its DTPA claim. The court of appeals found no evidence of a false, misleading, or deceptive act or practice in violation of sections 17.46(a) and 17.50(a)(1). The court did agree that the bank had breached an implied warranty in paying La Sara's checks on only one signature, but held that La Sara's cause of action for breach of warranty accrued in 1975 when the checking account was first opened. The court of appeals reasoned that La Sara was not a consumer then because the 1975 version of the DTPA defined services as "work, labor, or services purchased or leased for use for other than commercial or business use." *See Farmers & Merchants State Bank v. Ferguson*, 617 S.W.2d 918, 920 (Tex.1981).

### A. DTPA § 17.50(a)(2)—Breach of Warranty

Section 17.50(a)(2) provides that a consumer may maintain an action if he has been adversely affected by the breach of an express or implied warranty. A consumer is defined as an "individual, partnership or corporation, or governmental entity who seeks or acquires by purchase or lease any goods or services." Tex.Bus. & Com. Code Ann. § 17.45(4) (Vernon Supp.1984). The services provided by a bank in connection with a checking account are within the scope of the DTPA. *Farmer's & Merchants State Bank v. Ferguson*, 605 S.W.2d 320, 324 (Tex.Civ.App.—Fort Worth

1980), *aff'd on other grounds,* 617 S.W.2d 918 (Tex.1981).

■■■■ The court of appeals erred in applying the 1975 act to all of La Sara's checks. The applicable version of the DTPA is determined by the date the deceptive act or practice occurs. *Woods v. Littleton,* 554 S.W.2d 662, 666 (Tex.1977). If the bank breached a warranty by honoring La Sara's checks on an unauthorized signature, La Sara's cause of action accrued under the version of the DTPA in force at the time the checks were paid. The 1977 Act would therefore apply to those checks paid after May 23, 1977, the effective date of the amendment which deleted the phrase "for other than commercial or business use" from the definition of services. Because La Sara qualifies as a consumer under the 1977 act, we must determine whether the bank breached an implied warranty by paying checks contrary to La Sara's instructions.

■■■■ The DTPA does not define the term "warranty." [4] Furthermore, the act does not create any warranties; therefore any warranty must be established independently of the act. *Cheney v. Parks,* 605 S.W.2d 640, 642 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); D. Bragg, P. Maxwell, & J. Longley, *Texas Consumer Litigation* § 5.01 (2d ed. 1983). While express warranties are imposed by agreement of the parties to the contract, *Rinehart v. Sonitrol of Dallas, Inc.,* 620 S.W.2d 660, 662–3 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.); Tex.Bus. & Com. Code Ann. § 2.313 (Tex.UCC) (Vernon 1968), implied warranties are created by operation of law and are grounded more in tort than in contract. *Humber v. Morton,* 426 S.W.2d 554 (Tex.1968). Implied warranties are derived primarily from statute, although some have their origin at common law. *See Kamarath v. Bennett,* 568 S.W.2d 658 (Tex.1978); *Jacob E. Decker &*

*Sons, Inc. v. Capps,* 139 Tex. 609, 164 S.W.2d 828 (1942).

■■■■ One statutory source of implied warranties is the Uniform Commercial Code. *See, e.g.,* Tex.Bus. & Com.Code Ann. §§ 2.314, 2.315 (Tex.UCC) (Vernon 1968). Although the UCC imposes a number of warranties on customers and collecting banks in the payment process, *see id.* § 4.207, there is no mention of a warranty by a payor bank in favor of its customer. All of the warranties created in section 4.207 concern either the item itself (for instance, that it has not been materially altered) or the holder's relationship to it (that he has good title, for example). Each of these warranties goes to a present fact. On the other hand, when section 4.207 speaks of a promise to accept the return of a dishonored item, it speaks of an "engagement." Generally, courts are to construe statutes so as to harmonize with other relevant laws, if possible. *State v. Standard Oil Co.,* 130 Tex. 313, 107 S.W.2d 550 (1937). We hold that the bank's implied promise that it will not pay checks on an unauthorized signature is not a warranty, but only an implied term of the contract. A mere breach of contract is not a violation of the DTPA. *Ashford Development, Inc. v. USLife Real Estate Services Corp.,* 661 S.W.2d 933, 935 (Tex.1983).

*B. DTPA §§ 17.46(a) & 17.50(a)(1)— Deceptive Trade Practice*

■■■■ La Sara next contends that the bank's practice of paying its checks on an unauthorized signature violated the 1977 act's general prohibition against "(f)alse, misleading or deceptive acts or practices in the conduct of any trade or commerce." Tex.Bus. & Com.Code Ann. §§ 17.46(a), 17.-50(a)(1) (Vernon Supp.1984). We, however, like the court of appeals find no evidence that the bank's payment of La Sara's checks on only one signature was a decep-

---

**4.** This is unfortunate because the word's meaning at common law is ambiguous. *See* 5 S. WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 673 (3d ed. 1961). Karl Llewellyn, the father of the Uniform Commercial

Code, complained that, "To say warranty is to say nothing definite as to legal effect." K. LLEWELLYN, CASES AND MATERIALS ON THE LAW OF SALES 211 (1930).

tive trade practice. La Sara was fully informed of the bank's practice; each month the bank returned La Sara's cancelled checks with a statement of its account. Before 1979, it was an open question whether the failure to disclose material facts was a violation of 17.46(a). *See Robinson v. Preston Chrysler-Plymouth,* 633 S.W.2d 500 (Tex.1982) (failure to disclose an unknown material fact not a deceptive trade practice). This case, however, does not even involve a failure to disclose; the bank sent La Sara notice of all transactions. Although the bank's conduct may have been in bad faith under the UCC, it was not false, misleading, or deceptive.

■ In addition to the checks, the trial court found the $14,000 oral withdrawal and the two unauthorized loans to be deceptive trade practices. La Sara argues the court of appeals has erred in failing to address and affirm these findings. The first loan and the oral withdrawal. however, provide no basis for a DTPA claim because both occurred during the period governed by the 1975 act when La Sara did not qualify as a consumer of services. Only the second loan originated after the 1977 amendment to the DTPA which expanded the definition of services to include business and commercial uses.[5] La Sara maintains that this loan was a deceptive trade practice under sections 17.46(a) and 17.50(a)(1) because it was made without proper authorization and the proceeds were split between the accounts of La Sara and Jones.

We first considered whether a loan might provide the basis for a DTPA claim in *Riverside National Bank v. Lewis,* 603 S.W.2d 169 (Tex.1980). In *Riverside* the plaintiff Lewis sought to refinance the loan on his automobile through Riverside Bank. Riverside advised Lewis that the loan had been approved, but subsequently refused to lend the money. After his car was repossessed and sold, Lewis sued Riverside Bank alleging that the Bank's conduct violated the DTPA. We held that Lewis was not a consumer and therefore had no claim under the DTPA. We said that a person who seeks only to borrow money is not a consumer because the lending of money involves neither a good nor a service.

Since the holding in *Riverside,* we have twice limited the case to its facts, emphasizing that Lewis sought only the extension of credit from Riverside, and nothing more. In *Knight v. International Harvester Credit Corp.,* 627 S.W.2d 382, 389 (Tex. 1982), we held a lender subject to a DTPA claim because the lender and seller "were so inextricably intertwined in the transaction as to be equally responsible for the conduct of the sale." In determining that the borrower was a consumer, we considered the borrower's purpose for the loan. We distinguished *Riverside* because the borrower there sought only the extension of credit, whereas "Knight's objective in the transaction was the purchase of a dump truck." 627 S.W.2d at 389. In *Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705 (Tex.1983), we held the purchaser of a home could sue the bank under the DTPA for an unconscionable course of conduct in foreclosing on his partially constructed home. The bank had agreed to provide the interim financing to the builder in return for an assignment of the purchaser's note and mechanic's lien contract. Again we viewed the transaction from the purchasers' perspective and concluded "the Flennikens did not seek to borrow money; they sought to acquire a house." 661 S.W.2d at 708.

The rule of law that *Knight* and *Flenniken* announced is not restricted to cases involving financial institutions. In *Cameron v. Terrell and Garrett Co.,* 618 S.W.2d 535 (Tex.1981) we held that a buyer of a house could bring a DTPA action against a realtor from whom he had purchased nothing. In *Cameron,* the realtor, who was the seller's agent, represented to the buyer that the house in question was larger than it actually was. We held that the buyer was a DTPA consumer because of the pur-

---

**5.** Although the split deposit of the Holland Farms check occurred after the 1977 amend- ment, it was not found to be a deceptive trade practice by the trial court.

chase of the house; therefore, he could bring a DTPA action against anyone in the transaction who violated the act.

 Under *Knight* and *Flenniken,* a lender may be subject to a DTPA claim if the borrower's "objective" is the purchase or lease of a good or service thereby qualifying the borrower as a consumer. Obviously, we cannot determine La Sara's objective concerning this loan, because La Sara's complaint is that it did not authorize the transaction. There is no evidence, however, that Jones represented to the bank that the loan was to purchase or lease goods or services, that the bank thought the loan was for that purpose, or that the loan was one of a series with which La Sara obtained goods or services. In fact, there is no evidence that La Sara ever borrowed money from the bank for goods or services. Because the loan involves only the extension of credit, La Sara has not shown itself to be a consumer and therefore has no DTPA claim.

### III. Interest/Attorney's Fees

At trial, La Sara also obtained a judgment for interest and attorney's fees. In the court of appeals, the bank had points of error complaining of both. The court of appeals did not reach those points in light of its holding that La Sara could not recover any damages. Insofar as those points raised questions within our jurisdiction, we now address them to determine what judgment the court of appeals should have rendered. *Knutson v. Morton Foods, Inc.,* 603 S.W.2d 805 (Tex.1980).

 The bank asserted that La Sara's claim was not one arising from a "written contract ascertaining the sum payable," within the meaning of the prejudgment interest statute, Tex.Rev.Civ.Stat. Ann. art. 5069–1.03 (Vernon Supp.1984). Therefore, according to the bank, La Sara is not entitled to prejudgment interest. 578 S.W.2d 109, 116–117 (Tex.1979). The requirement that the contract set out a sum payable has always been liberally construed by this court. As was said in *Federal Life Insurance Co. v. Kriton,* 112 Tex.

532, 249 S.W. 193 (1923), [i]t is sufficient .... if the contract provides the conditions upon which liability depends and fixes a measure by which the sum payable can be ascertained with reasonable certainty, in the light of the attending circumstances." *Id.* 249 S.W. at 195. In this case, the depository contract provides the conditions upon which liability depends—payment of the depositor's funds except according to his instructions, and fixes a measure by which the sum payable can be ascertained—the amount paid. Hence, this case falls within the prejudgment interest statute.

 Article 5069–1.03 was amended in 1979, after La Sara's cause of action arose but before La Sara filed suit. The change was to provide that interest would begin running thirty days after the sum became due. In this case, however, the trial court awarded interest on each check from the date that it was cashed. It has long been the rule in Texas that when the legislature repeals a statute creating a remedy, that repeal is effective immediately. *Knight v. International Harvester Credit Corp.,* 627 S.W.2d at 384. It follows that if the legislature amends a remedy such as this one, the change will be effective retroactively. Hence, the trial court erred in calculating interest from the date that each check was cashed or loan made, rather than thirty days thereafter. Therefore, we remand the cause to the trial court to recalculate interest accordingly.

 The bank also argued to the court of appeals that La Sara was not entitled to attorney's fees. The basis of the bank's complaint was evidentiary. At trial, La Sara had a local attorney testify to what would be a reasonable fee for handling the case. We hold that this testimony was some evidence supporting the trial court's award of attorney's fees. The bank also argued to the court of appeals that there was factually insufficient evidence to support the trial court's award. That point of error is not within our jurisdiction. Therefore, we must remand the cause to

the court of appeals to consider it. *Biggs v. United States Fire Insurance Co.*, 611 S.W.2d 624 (Tex.1981).

We affirm the court of appeals in reversing the award of additional damages under the DTPA. We reverse the judgment of the court of appeals and affirm the trial court's judgment for actual damages. We remand the cause to the court of appeals to consider the factual sufficiency of La Sara's evidence on attorney's fees. The court of appeals, after considering that point, is to remand the cause to the trial court to recalculate prejudgment interest in accordance with art. 5069–1.03 as amended.[6]

### ON MOTION FOR REHEARING

BARROW, Justice.

The bank argues that it is entitled to have the cause remanded to the court of appeals for consideration of a factual insufficiency point of error. The court of appeals did not rule on a contention that there was factually insufficient evidence to support the trial court's finding that the bank had actual knowledge of the unauthorized change in the signature card. The bank's point of error in the court of appeals, however, asserted that 47 separate findings of fact, including the one at issue here,

> are contrary to the undisputed testimony in the cause, and there is no evidence to support them, or, in the alternative, are based upon insufficient evidence, and are contrary to the great and overwhelming preponderance of the evidence in this case.

Such a point of error does not "sufficiently direct the court's attention to the nature of the complaint made regarding each such ... finding." Tex.R.Civ.P. 418(d). Nor are "separate record references" made concerning each finding. *Id.* Moreover, the factual sufficiency point, a distinct legal theory from a no evidence attack, was not

separately briefed. The only references to the record state that the "undisputed evidence shows" or "it must be clear" or the like. This type of briefing refers to legal, not factual, insufficiency. *Holley v. Watts*, 629 S.W.2d 694 (Tex.1982). Points of error not separately briefed are waived. *Burgess v. Sylvester*, 143 Tex. 25, 182 S.W.2d 358 (1944). We hold that this point of error does not entitle the bank to a remand. *See Great American Insurance Co. v. Langdeau*, 379 S.W.2d 62, 74 (Tex.1964).

The motions for rehearing are overruled.

BARROW, J., dissents.

BARROW, Justice, dissenting.

I respectfully dissent in part. I would remand this cause to the court of appeals for consideration of the bank's factual insufficiency point. By that point, the bank complains of the finding that it had actual knowledge of the unauthorized change in the signature card.

This court does not have jurisdiction of points that attack the factual sufficiency of the evidence to sustain a jury finding. *Hurst v. Sears, Roebuck & Co.*, 647 S.W.2d 249, 253 (Tex.1983); Tex.Rev.Civ.Stat.Ann. arts. 1728, 1821. As the majority points out, the bank urged under one point that there was no evidence to support the jury finding, or in the alternative the evidence was factually insufficient to support that finding. This manner of presentation is expressly authorized by Rule 418(d), Tex.R. Civ.P., as amended January 1, 1981. Furthermore, the bank's argument was fully presented under this point because the same record references and legal arguments support both the no evidence and the factual insufficiency contentions.

I agree that there is "some evidence" to support the jury finding, but we do not have jurisdiction to consider the factual insufficiency contention.

---

**6.** According to the judgment of the trial court, Fidelity is entitled to 20% of La Sara's judgment against the bank.