OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

March 25, 2002

The Honorable Clyde Alexander
Chair, House Committee on Transportation
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0481

Re: Whether Harris County may prohibit a tow truck from having auxiliary stop and tail lamps in or under the factory-mounted light bar, and related question (RQ-0441-JC)

Dear Representative Alexander:

You ask whether Harris County may "prohibit by rule or ordinance, a tow truck from having auxiliary stop and tail lamps in or under the factory mounted light bar."[1] You also ask whether Harris County may "prohibit by rule or ordinance, a tow truck from having a red or blue lens in the emergency lights." Request Letter, note 1, at 1. For the reasons set forth below, we answer both questions in the affirmative.

The controversy before us arises because "[s]everal tow truck companies in Harris County are mounting standard manufacturer's light bars on their vehicles which contain the required lights by law. However, for safety reasons, the light bars also contain auxiliary stop and tail lamps. Another issue is the color of the lamps on the light bars." *Id.* You indicate that "[t]he tow trucks are being cited by Harris County officials for not having amber colored lights, but rather having blue and red colored lamps." *Id.*

Since 1987, Harris County has been the subject of a statute pertaining to the regulation of towing companies. *See* Act of July 20, 1987, 70th Leg., 2d C.S., ch. 41, § 1, 1987 Tex. Gen. Laws 128, 129, 130. The most recent version of that statute, codified as section 545.306 of the Transportation Code, states as follows:

> (a) The commissioners court of a county with a population of 3.3 million or more shall by ordinance provide for the licensing of or the granting of a permit to a person to remove or store a vehicle authorized by Section 545.305 to be removed in an unincorporated area of the county. *The ordinance must include rules to ensure the*

---

[1]Letter from Honorable Clyde Alexander, Chair, House Committee on Transportation, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (Sept. 21, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

> *protection of the public and the safe and efficient operation of towing and storage services in the county.* The sheriff shall determine the rules included in the ordinance with the review and consent of the commissioners court.
>
> (b) The commissioners court shall set the fee for the license or permit in an amount that reasonably offsets the costs of enforcing the ordinance. The commissioners court shall use each license or permit fee to pay salaries and expenses of the sheriff's office for conducting inspections to determine compliance with the ordinance and laws relating to dealers in scrap metal and salvage.

TEX. TRANSP. CODE ANN. § 545.306 (Vernon Supp. 2002) (emphasis added). Section 545.305, entitled "Removal of Unlawfully Stopped Vehicle," authorizes a peace officer to remove or to require the removal of a vehicle from the highway if the vehicle is found to be within one of nine categories, including one in which the vehicle "is disabled" or constitutes a hazard. *See id.* § 545.305 (Vernon 1999).

Counties are ordinarily governmental bodies of limited jurisdiction and may enact regulations only when specifically permitted to do so by state law. *See Canales v. Laughlin*, 214 S.W.2d 451, 453 (Tex. 1948); TEX. CONST. art. V, § 18; Tex. Att'y Gen. Op. Nos. DM-183 (1992) (commissioners court authorized to regulate smoking on county property); JM-1098 (1989) (commissioners court authorized to regulate smoking in county jail). Section 545.306 accords to Harris County a special status with regard to the regulation of towing and storage services. Pursuant thereto, the Commissioners Court of Harris County has promulgated an extensive regulatory scheme relating to nonconsent towing and storage services. The regulations describe a permitting and application process; identification, insurance, and safety requirements for tow trucks; specifications for storage lots; and penalties and fees. *See* HARRIS COUNTY, TEX., HARRIS COUNTY WRECKER REGULATIONS FOR LAW ENFORCEMENT NON CONSENT TOWING AND STORAGE SERVICES (1989) (on file with Opinion Committee). A tow truck owner that wishes to perform nonconsent tows "must have its own permit." *See id.* § C.1. "A permit allows a tow truck to tow nonconsent vehicles from law enforcement scenes in the unincorporated areas of Harris County." *Id.* § C.3. A person who wishes to obtain such a permit is required to "file a written application with the [Sheriff's] Department annually on a form provided by the Department for that purpose. The written application form shall be accompanied by a certificate of insurance, the required fees, and a copy of the registration." *Id.* § D.1. The particular regulation of which you inquire is listed as a "safety requirement." It provides:

> All wreckers must be equipped with emergency lights visible from all directions and shall be rotating or strobe type lights. The lights shall be amber in color.

*Id.* § H.3.k.

In 2001, the legislature in House Bill 1681 amended section 643.201 of the Transportation Code to provide, in relevant part:

>　(a) In addition to the registration requirements of Subchapter B, a political subdivision of this state may regulate the operation of a tow truck to the extent allowed by federal law.
>
>　. . . .
>
>　(c) A political subdivision may require the registration of a tow truck that performs a nonconsent tow in the political subdivision, regardless of whether the owner of the tow truck has a place of business in the territory of the political subdivision.
>
>　. . . .
>
>　(e) In this section:
>
>　. . . .
>
>　(2) "Consent tow" means any tow of a motor vehicle initiated by the owner or operator of the vehicle or by a person who has possession, custody, or control of the vehicle. *The term does not include a tow of a motor vehicle initiated by a peace officer investigating a traffic accident or a traffic incident that involves the vehicle.*
>
>　. . . .
>
>　(4) "Nonconsent tow" means any tow of a motor vehicle that is not a consent tow.

TEX. TRANSP. CODE ANN. § 643.201 (Vernon Supp. 2002) (emphasis added) (footnote omitted). Prior to the 77th Legislative Session, section 643.201 had applied only to a "municipality." House Bill 1681 extended the scope of the statute "to include all political subdivisions of the state," a category that clearly includes counties. HOUSE COMM. ON TRANSPORTATION, BILL ANALYSIS, Tex. H.B. 1681, 77th Leg., R.S. (2001) (enrolled version). The bill also redefined the term "consent tow" to exclude "a tow of a motor vehicle initiated by a peace officer investigating a traffic accident or a traffic incident that involves the vehicle," and redefined "nonconsent tow" as "any tow of a motor vehicle that is not a consent tow." *See* TEX. TRANSP. CODE ANN. § 643.201(e)(2), (4) (Vernon Supp. 2002).

Section 545.306 of the Transportation Code, which accords Harris County a special status with regard to the regulation of towing and storage services for nonconsent tows, and section

643.201 thereof, which authorizes political subdivisions, including counties, to prescribe regulations for nonconsent tows "to the extent allowed by federal law," are thus cumulative with regard to regulation of nonconsent tows by Harris County. *See id.* §§ 545.306(a) (addressing counties with population of 3.3 million or more, Harris County population is 3,400,578[2]); 643.201(a) (Vernon Supp. 2002). As a result, we must look to federal law to determine the validity of Harris County's requirement that wreckers performing nonconsent tows "be equipped with emergency lights visible from all directions"; that those lights "be rotating or strobe type lights"; and that the lights "be amber in color."

Subsection (c)(1) of 49 U.S.C. § 14501 provides:

> (1) **General rule.**--Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more states may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501 (1994). In *Cardinal Towing and Auto Repair, Inc. v. City of Bedford*, 180 F.3d 686 (5th Cir. 1999), a case involving nonconsensual towing services performed by a municipality, the Court of Appeals for the Fifth Circuit explained the background of this statute. A part of the move by Congress in 1994 "to deregulate the motor carrier industry," subsection 14501(c) preempts "most state and local regulation" thereof. *Cardinal Towing,* 180 F.3d at 690.

In *Cardinal Towing,* an unsuccessful bidder for a contract to provide nonconsent towing services brought an action against the city of Bedford, on the grounds, *inter alia,* that the ordinance that permitted the contracting was preempted by federal law. *See id.* at 688-90. In 1995, the city, by ordinance, had decided to "contract with a single company to perform all of the tows requested by the City police." *Id.* at 689. The ordinance was limited "to purely nonconsensual situations in which the Bedford police requested a tow." *Id.* Applicants for the contract "were required to comply with a number of requirements," including "a guarantee of response time within fifteen minutes"; "access to a class eight wrecker"; "maintenance of an office at the company's vehicle storage facility"; "computerized record keeping"; and specific levels of insurance coverage. *Id.* The city contended that "the ordinance was not regulation, but rather an ordinary contracting decision of a proprietary nature and thus . . . outside the scope of section 14501(c) preemption." *Id.* at 690. According to the city's argument, "the ordinance and contract specifications were designed only to procure services that the city itself needed, not to regulate the conduct of others. Such

---

[2]*See* BUREAU OF THE CENSUS, U.S. DEP'T OF COMMERCE, 2000 CENSUS OF POPULATION, General Population Characteristics: Texas, *available at* http://www.census.gov/.

innocuous market participation . . . does not constitute a law, regulation, or provision having the force and effect of law under section 14501(c)." *Id.* at 691. The court agreed.

The court called attention to the traditional distinction between regulations and those actions that a governmental body takes in its proprietary capacity: "actions taken to serve the government's own needs rather than those of society as a whole." *Id.* The court noted the United States Supreme Court's observation that "when a state or municipality acts as a participant in the market and does so in a narrow and focused manner consistent with the behavior of other market participants, such action does not constitute regulation subject to preemption." *Id.* Applying this principle to the facts before it, the *Cardinal Towing* court found that:

> [t]he City's ordinance and contract specifications had an obvious connection to the City's narrow proprietary interest in its own efficient procurement of services. Selecting a single company to perform the City's tows clarified responsibility, minimized administrative confusion, and allowed for the setting and easy supervision of a unitary quality standard for that particular work for the City.

*Id.* at 693. The court further observed that, while the structure obtained under the Bedford ordinance is "somewhat distorted by the fact a third party [the owner of the towed vehicle] gets left with the bill, [the scheme] is in its relevant essentials an ordinary market for services." *Id.* at 697. In such an "oddly bifurcated market, the party requesting the tow is undeniably also acting as a consumer, and when the city requests a tow it should be treated as a consumer." *Id.* Consequently, "the City's role here is of a proprietary nature, notwithstanding the fact that a third party pays for the service." *Id.*

While *Cardinal Towing* involved an ordinance that permitted the award of a nonconsensual towing contract only to a single bidder, a subsequent case from the court of appeals for the Sixth Circuit reached the same result on the basis of a factual scenario that more closely resembles the situation in Harris County. In *Petrey v. City of Toledo*, 246 F.3d 548 (6th Cir. 2001), a case cited with approval in the Fifth Circuit case of *Stucky v. City of San Antonio*, 260 F.3d 424, 439-40 (5th Cir. 2001), an ordinance of the City of Toledo, Ohio, provided that a holder of a Class A towing license from the city authorized "the holder to conduct non-consensual tows ordered by the Toledo Police Department." *Petrey*, 246 F.3d at 551. To obtain a Class A license, an applicant was required to pay a filing fee, maintain significant insurance coverage, ensure the availability of at least three approved tow trucks, provide storage space for at least one hundred vehicles, and maintain a valid special use permit for any licensed premises and auxiliary storage sites. *See id.* Petrey challenged a number of these requirements. The court of appeals specifically joined the Fifth Circuit in finding that "Toledo, when acting as a market participant, may set certain standards and ultimately choose

those towers which are best able to perform non-consensual police tows for it, without being subject to 14501(c)'s preemption provisions." *Id.* at 555. The court continued:

> Section 14501(c)(1) does not prevent Toledo from choosing the towers with which it will do business. . . . By setting standards for those companies who will be allowed to conduct police-ordered tows, Toledo can ensure that there will be sufficient space for the vehicles it needs to have towed, that any storage facilities to which the cars are towed will be safe, and that the drivers who operate the tow trucks will have the training to tow vehicles safely and efficiently.

*Id.* at 558. As a result, the court concluded that:

> the challenged Toledo towing provisions dealing solely with those towers wishing to perform non-consensual police tows for the City, along with the Rule limiting the number of police towers to eleven, are proprietary in nature, do not constitute regulation or have the force and effect of law, and thus are not preempted by 49 U.S.C. § 14501(c)(1).

*Id.* at 559.

The Toledo city ordinance considered in *Petrey* is similar to the Harris County ordinance that is the subject of your request. In both cases, the governmental body imposes a permitting or licensing scheme on those tow truck operators who wish to perform nonconsent police tows. Both ordinances require written applications, the payment of fees, proof of insurance coverage, and availability of storage space. On the basis of the analysis adopted by the courts in *Cardinal Towing* and *Petrey*, and other information provided to us, it appears that Harris County's regulations regarding nonconsent towing and storage services are proprietary in nature and thus not preempted by 49 U.S.C. § 14501(c), and we believe a court would so hold.

Both section 545.306 of the Transportation Code, which grants to Harris County the authority to regulate towing and storage services, and section 643.201, which permits political subdivisions, including counties, to prescribe regulations for nonconsent tows "to the extent allowed by federal law," appear to authorize the provisions of the nonconsent towing and storage services ordinance adopted by Harris County, including section H.3.k., which requires that wreckers performing nonconsent tows "be equipped with emergency lights visible from all directions"; that those lights "be rotating or strobe type lights"; and that "the lights . . . be amber in color." HARRIS COUNTY, TEX., HARRIS COUNTY WRECKER REGULATIONS FOR LAW ENFORCEMENT NON CONSENT TOWING AND STORAGE SERVICES § H.3.k (1989). Assuming that Harris County's nonconsent towing regulations are in all aspects proprietary in nature, Harris County may, by rule or ordinance, prohibit a tow truck operator performing nonconsent tows from having auxiliary stop and tail lamps in or under the

factory mounted light bar. In addition, Harris County may prohibit such a tow truck from having a red or blue lens in the emergency lights.

We must also consider, however, general legislation enacted by the State of Texas with regard to the lighting equipment permitted on tow trucks. Subsection (d) of section 547.305 of the Transportation Code was amended in 1999 to provide, in relevant part:

> (d) A vehicle may be equipped with alternately flashing lighting equipment described by Section 547.701 or 547.702 only if the vehicle is:
>
> . . . .
>
> (4) a tow truck while under the direction of a law enforcement officer at the scene of an accident or while hooking up to a disabled vehicle on a roadway; or
>
> (5) a tow truck with a mounted light bar which has turn signals and stop lamps in addition to those required by Sections 547.322, 547.323, and 547.324, Transportation Code.

TEX. TRANSP. CODE ANN. § 547.305(d)(4), (5) (Vernon Supp. 2002). Section 547.702, which relates to additional equipment for authorized emergency vehicles, provides in relevant part:

> (c) Except as provided by this section, an authorized emergency vehicle shall be equipped with signal lamps that:
>
> (1) are mounted as high and as widely spaced laterally as practicable;
>
> (2) display four alternately flashing red lights, two located on the front at the same level and two located on the rear at the same level; and
>
> (3) emit a light visible at a distance of 500 feet in normal sunlight.

*Id.* § 547.702(c) (Vernon 1999). Thus, a tow truck with a mounted light bar is authorized to have signal lamps that "display four alternately flashing red lights, two located on the front at the same level and two located on the rear at the same level." *Id.* § 547.702(c)(2).

The bill analysis for House Bill 3366, which enacted subdivision (d)(5) of section 547.305 in 1999, explains the legislature's reasoning:

> Currently, federal lighting regulation allows for accessory lights on motor carriers in addition to required taillamps and turn signals. Tow trucks are now equipped with light bars that have red turn signals and stop lights, so that other drivers may be aware of changes in the speed and direction of the tow truck even when the rear of the truck is obscured because it is towing another vehicle. Additionally, these tow lights are currently required to be placed on the vehicle being towed and not on the tow truck. The purpose of this bill is to allow tow trucks [to] be equipped with additional lighting equipment.
>
> H.B. 3366 allows a tow truck to be equipped with alternately flashing lighting equipment, in addition to its required mounted light bar.
>
> . . . .
>
> Section 1. Amends Section 547.305(d), Transportation Code, to authorize a tow truck with a mounted light bar which has turn signals and stop lamps in addition to those required by Sections 547.322 (Taillamps Required), 547.323 (Stoplamps Required), and 547.324 (Turn Signal Lamps Required), Transportation Code, to be equipped with alternately flashing lighting equipment described by Sections 547.701 (Additional Equipment Requirements for School Buses) or 547.702 (Additional Equipment Requirements for Authorized Emergency Vehicles). Makes nonsubstantive changes.
>
> . . . .

HOUSE COMM. ON TRANSPORTATION, BILL ANALYSIS, Tex. H.B. 3366, 76th Leg., R.S. (1999).

It is settled law that statutes must, if possible, be harmonized in such a way as to give effect to each. "Generally, courts are to construe statutes so as to harmonize with other relevant laws if possible." *La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 565 (Tex. 1984) (citing *State v. Standard Oil Co.*, 107 S.W.2d 550, 559 (Tex. 1937). Subsection 547.305(d) of the Transportation Code does not distinguish between consent and nonconsent tows. Nor does that statute *require* tow trucks in general to be equipped with the precise lighting equipment authorized thereby. As the bill analysis for House Bill 3366 states, "[t]he purpose of this bill is to *allow* tow trucks [to] be equipped with additional lighting equipment." HOUSE COMM. ON TRANSPORTATION, BILL ANALYSIS, Tex. H.B. 3366, 76th Leg., R.S. (1999) (emphasis added). On the other hand, section 545.306(a) of the Transportation Code *requires* Harris County to "provide for the licensing of or the granting of a permit to a person to remove or store a vehicle," and section 643.201(a) of the Transportation Code

*authorizes* Harris County to *require* the regulation of a tow truck that performs nonconsent tows, and *permits* Harris County to "regulate the operation of a tow truck to the extent allowed by federal law." TEX. TRANSP. CODE ANN. §§ 545.306(a), 643.201(a) (Vernon Supp. 2002). Subsection 14501(c)(1) of 49 U.S.C., in turn, as construed by recent federal court decisions, imposes no limitations on the authority of a political subdivision to regulate proprietary nonconsensual towing. *See* 49 U.S.C. § 14501(c)(1) (1994).

Thus, in our view, the statutes may be reconciled by concluding that subsection 547.305(d) of the Transportation Code permits a tow truck to have the lighting equipment described therein, but that Harris County, in its regulation of nonconsensual towing, may enact an ordinance that, with regard to lighting equipment, is at variance with, and prevails over, any conflicting portions of subsection 547.305(d). In other words, section 643.201 of the Transportation Code, and federal law carve out an area of regulation of nonconsensual towing by political subdivisions and that area is exempted from the general lighting specifications authorized by subsection 547.305(d). A county is, of course, at liberty to comply with those general lighting provisions with regard to nonconsensual towing. By the same token, Harris County is free to impose different lighting requirements for nonconsent tows, including the requirement that all the lights "shall be amber in color." *See* HARRIS COUNTY, TEX., HARRIS COUNTY WRECKER REGULATIONS FOR LAW ENFORCEMENT NON CONSENT TOWING AND STORAGE SERVICES § H.3.k (1989).

Thus, in answer to your specific questions, Harris County may, by rule or ordinance, prohibit a tow truck operator performing nonconsent tows from having auxiliary stop and tail lamps in or under the factory-mounted light bar. In addition, Harris County may prohibit a tow truck from having a red or blue lens in the emergency lights.

## S U M M A R Y

Assuming that Harris County's regulations regarding nonconsent towing and storage services are in all aspects proprietary in nature, Harris County may, by rule or ordinance, prohibit a tow truck operator performing nonconsent tows from having auxiliary stop and tail lamps in or under the factory-mounted light bar. In addition, Harris County may prohibit a tow truck from having a red or blue lens in the emergency lights.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee