COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-334-CV

 

 

IN THE INTEREST OF B.S.H.,                                                                 

A CHILD

                                                                                                        

                                              ------------

 

           FROM THE 360TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Cory H. appeals the trial court=s order
modifying child support.  We affirm.

I. 
Background

Cory and Tricia divorced in January 1993 when
their only child, B.S.H., was two years old. 
In the divorce decree, Cory was ordered to pay $180 a month for child
support through the Tarrant County Child Support Office beginning February 1,
1993.








In the early part of 1997, Cory started making
payments directly to Tricia instead of through the county office.  In 1999, he began to pay $200 each month
regularly.  In 2000, he increased the
payments to $420 and then to $430 a month. 
From June 2001 through September 2002, he usually paid $510 a
month.  From October 2002 through July
2005, he consistently paid $450 each month.

In April 2007, Cory filed a petition to modify
asking that (1) the direct payments to Tricia be credited to his child support
amount, (2) the child support amount be increased to meet family code
guidelines, and (3) the amounts paid over the $180 court-ordered monthly
payment be credited to his future child support obligation.  The Texas attorney general intervened in the
case two weeks later.  Tricia filed an
answer and a counter-petition seeking increased support and an arrearage
judgment for an alleged three months of missed payments.

The case went to a bench trial in February
2008.  During trial, the parties
stipulated that support should be set at $594 a month.  They also stipulated that (1) Cory made all
payments shown in Petitioner=s
Exhibit 1, (2) Petitioner=s Exhibit 5, a summary of those
payments, was corrected to deduct payments for such items as braces and
extra-curricular activities, and (3) Cory had paid $13,185 more in child
support than had been ordered by the court. 








Cory testified that he had made increased
payments to Aget ahead@ on his
child support.  Tricia, however,
testified that Cory never said to her, AI=m just
getting ahead by sending this extra money.@  Also, in a letter to B.S.H. admitted in
evidence, Cory wrote, AOver the years I have increased
the child support amount on my own to make sure you had everything you needed
growing up.@ 

Tricia further testified that after Cory
graduated from college she contacted a lawyer to see about increasing the
amount of child support.  The lawyer told
her that it would cost about $1,100 to modify the child support order.  Tricia testified that when she relayed this
information to Cory, he suggested that, instead of incurring attorney=s fees,
he would voluntarily increase the amount of support he was paying based upon
his income.  Cory and Tricia then agreed
on the amount by which support would be increased.  They continued to make similar agreements
about increases in support over the years.

After taking the case under advisement, the trial
court signed an order (1) modifying current support to $594 a month, (2)
finding that Cory owed no arrears, and (3) finding that over-payments should
not be credited towards future child support obligations.








Cory requested, and the trial court filed,
findings of fact and conclusions of law. 
The trial court found that Cory had voluntarily increased his support
payments in agreement with Tricia to avoid the cost of going to court to obtain
a modification of the decree and that he had intended the increased support
payments to be current support for their child. 
The trial court concluded that Cory was not entitled to a credit for the
future support obligations because of the amounts that he paid in excess of
court-ordered child support in the past.

II.  Issues
on Appeal

Cory contends in four issues that the trial court
abused its discretion by refusing to credit his past excess child support
payments toward his future support obligations. 
He argues that refusal to credit the overpayments violates common law
and the purpose of section 154.014 of the family code, denies him a statutory
right to reimbursement under section 154.012 of the family code, and amounts to
a prohibited retroactive increase in his child support obligation under section
156.401(b) of the family code.

III. 
Standard of Review








We review a trial court=s
decision modifying child support for an abuse of discretion.[1]  To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principlesCin other
words, whether the act was arbitrary or unreasonable.[2]  In making this determination, we view the
evidence in the light most favorable to the trial court=s order,
indulging every legal presumption in its favor.[3]  An abuse of discretion does not occur as long
as there is some probative and substantive evidence to support the trial court=s
decision.[4]

IV. 
Application of Family Code Section 154.014

In part of his first issue and in his third
issue, Cory argues that the trial court=s
refusal to credit his increased support payments toward his future obligations
is contrary to the purpose of family code sections 154.012 and 154.014 and
would constitute an impermissible modification of a court decree without
approval of the court.  Section 154.014
provides, in pertinent part:

(a) If a child support
agency or local child support registry receives from an obligor who is not in
arrears a child support payment in an amount that exceeds the court-ordered
amount, the agency or registry, to the extent possible, shall give effect to
any expressed intent of the obligor for the application of the amount that
exceeds the court-ordered amount.

 








(b) If the obligor does
not express an intent for the application of the amount paid in excess of the
court-ordered amount, the agency or registry shall:

 

(1)  credit the excess amount to
the obligor=s future child support
obligation; and 

 

(2) promptly disburse the excess
amount to the obligee.[5]

Cory concedes that section 154.014 does not
control this case because it regulates the manner by which excess child support
payments to child support agencies or registries, not to individual obligees,
must be applied.  He urges, however, that
the trial court=s order refusing to credit his
past over-payments to his future obligations is contrary to the Apurpose@ of
section 154.014, which, he claims, provides guidance on how payments should be
applied.  The attorney general agrees
that section 154.014 offers guidance on Athe
proper way to apply payments that exceed the court-ordered amount.@








We agree that section 154.014 of the family code
offers guidance in determining how excess payments should be applied in a case
where excess child support payments are made directly to individual
obligees.  Accordingly, we hold that in a
case where an individual obligee receives from an obligor who is not in arrears
a child support payment that exceeds the court-ordered amount, the trial court
shall give effect to any expressed intent of the obligor to determine the
proper application of the amount that exceeds the court-ordered amount.  

The record in this case shows that the trial
court did indeed focus on Cory=s intent
in making the payments.  The court stated
during trial, A[i]t=s the
Court=s
understanding that the factual issue is what the expressed intent of the
obligor was.@ 
Thereafter, the trial court made these findings:

8.  Cory [H.] voluntarily increased the amount of
child support he was paying to Tricia [H.] to $200.00 per month in 1999 and
then to the sum of $430.00 per month in August or September 2000.  This occurred at the same [time] he became a
school teacher.  At approximately the
same time, Respondent Tricia [H.] sought legal advice about modification to
increase child support.  After that
consultation and discussions with Cory [H.], no motion to modify to increase
child support was brought since Cory [H.] was paying increased child support
without court action.

 

. . . . 

 

10.  Cory [H.] voluntarily increased the amount
of child support that he paid directly to Tricia [H.] in 1999 and again in 2000
partially because Tricia [H.] had consulted with an attorney.

 

11.  Cory [H.] voluntarily increased the amount
of child support that he paid directly to Tricia [H.] in 1999 and again in 2000
partially because Tricia [H.] agreed to not pursue legal action if the child
support payments were increased.

 

12.   Cory [H.] increased the amount he paid to
Tricia [H.] as child support in lieu of Tricia [H.] taking legal action to
increase support.

 

13.  Cory [H.] intended his increased support
amounts beginning in 1999 and then in September 2000 to be current child
support.

 








14.  Cory [H.] did not intend for payments made
in excess of court ordered support to be credited as future child support at
the time he made the payments. (Emphasis added.)

 

Thus, the trial court found that Cory=s intent
in paying the excess amount of child support to Tricia was partially to avoid
the cost of modifying the decree.  There
is no finding or evidence that either Cory or Tricia intended the excess
payment to effect a modification of the existing child support order.  Because Cory has not challenged the trial
court=s
findings that he agreed to pay additional support to avoid the cost of
modifying the decree, all of which are supported by the evidence, we are bound
to accept them.[6]  We overrule part of issue one and all of
issue three.  

V.  Conflict with Family Code Section 154.012 Right of
Reimbursement

 








In issue two and part of issue one, Cory contends
that the trial court misinterpreted what section 154.014 means by Aexpressed
intent@ and
improperly found that Cory=s intent
was for the excess payments to be for current child support.  According to Cory, the question that is to be
determined in deciding the obligor=s
expressed intent is whether the obligor intended that the payment be for Asomething
other than child support.@ 
Cory contends that to interpret it to mean whether a payment was
intended as future or current support would be incongruous with section 154.012
of the family code, which entitles obligors who overpay to recover the excess
without a finding of intent.[7]  We disagree.

AGenerally, courts are to
construe statutes so as to harmonize with other relevant laws, if possible.@[8]  If adopted by this court, Cory=s
interpretation of sections 154.012 and 154.014 would put them in conflict.  Under section 154.014, if the obligor intends
the increased payment to be additional current support, it is treated that
way.  But, under Cory=s
interpretation of section 154.012, any increased payment is to be treated as an
advance payment towards future obligations, which must be reimbursed after
termination of the obligation, regardless of what the obligor intended when he
made the payment.








Under the Code Construction Act, in interpreting
a statute, it is presumed that a just and reasonable result is intended and
that the public interest is favored over any private interest.[9]  Cory=s
interpretation of sections 154.012 and 154.014 would make it impossible for a
court to recognize an obligor=s intent
to provide additional current support for his or her child.  This would not be in the best interest of the
children of this state.  

Statutes are also to be construed in light of the
common law.[10]  Under common law, a parent may always provide
more support for a child than is required by a court order.[11]  A[V]oluntary
payments made [in fulfillment], or partial fulfillment, of the common law
obligation [to support a child] are not necessarily to be offset against the
statutory obligation enforced by a court order.@[12]  To construe section 154.012 to automatically
make any increased support payment an advance payment against future
obligations, would be contrary to the common law principle that an obligor may
voluntarily provide additional support for his or her child. 








The excess child support payments referred to in
section 154.012, therefore, do not refer to additional or increased payments
that an obligor intends to make to meet the current needs of his or her child.[13]  Rather, they are excess payments mistakenly
made or intended to be advances against future obligations.  This is the only interpretation of section
154.012 that harmonizes with section 154.014 and the common law, and that
furthers the public interest in promoting the best interest of the children of
this state.  We overrule issue two and
the remainder of issue one.

VI. 
Retroactive Modification

Cory complains in his fourth issue that the trial
court=s
actions amounted to an impermissible retroactive modification of his child support
obligation.  The trial court, however,
did not find that Cory was obliged retroactively to provide additional
support.  It found only that he had
intended his increased payments to be applied to current support for the child
and that, as a result, they would not be considered advance payments for future
support.  We overrule issue four.

VII. 
Conclusion

We overrule Cory=s four
issues and affirm the judgment of the trial court. 

 

PER CURIAM

 

PANEL:  CAYCE, C.J.; DAUPHINOT
and MCCOY, JJ.

DELIVERED:  December 23, 2009   











[1]Worford v. Stamper, 801 S.W.2d 108, 108B09 (Tex. 1990); In re
P.J.H., 25 S.W.3d 402, 405 (Tex. App.CFort Worth 2000, no pet.).





[2]Downer v. Aquamarine Operators,
Inc.,
701 S.W.2d 238, 241B42 (Tex. 1985), cert.
denied, 476 U.S. 1159 (1986).





[3]P.J.H., 25 S.W.3d at 405; see
In re D.S., 76 S.W.3d 512, 516 (Tex. App.CHouston [14th Dist.]
2002, no pet.). 





[4]Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211
(Tex. 2002) (op. on reh=g).

 





[5]Tex. Fam. Code Ann. ' 154.014 (Vernon 2008).





[6]Inimitable Group, L.P. v.
Westwood Group Dev. II, Ltd., 264 S.W.3d 892, 902 n.4 (Tex. App.CFort Worth 2008, no
pet.).





[7]Tex. Fam. Code Ann. ' 154.012 (Vernon 2008).





[8]La Sara Grain Co. v.
First Nat=l Bank of Mercedes, 673 S.W.2d 558, 565
(Tex. 1984). 





[9]Tex. Gov=t Code Ann. ' 311.021(3), (5) (Vernon
2005).





[10]See id. ' 311.023(4).





[11]In re L.K.K., No. 11-07-00106-CV,
2008 WL 4173742, at *2 (Tex. App.CEastland Sept. 11, 2008, pet. denied) (mem. op.);
Lewis v. Lewis, 853 S.W.2d 850, 854 (Tex. App.CHouston [14th Dist.]
1993, no writ).





[12]In re McLemore, 515 S.W.2d 356, 358
(Tex. Civ. App.CDallas 1974, orig.
proceeding).





[13]See L.K.K., 2008 WL 4173742, at *2.